## SHARPE ET AL. *v.* BAKER ET AL.

[No. 7,186. Filed November 28, 1911. Rehearing denied June 29, 1912. Transfer denied December 12, 1912.]

1. JOINT TENANCY.—*Requisites.*—To constitute a joint tenancy, the tenants must have one and the same interest, which must accrue by one and the same conveyance, must commence at one and the same time, and must be held by one and the same undivided possession. p. 552.

2. JOINT TENANCY.—*Creation.—Nature.*—A joint tenancy can be created in no other way than by purchase, and is an estate in which each tenant is the owner of an equal share for the purpose of immediate alienation, but, in which, for the purpose of possession and survivorship, each is the owner of the whole. p. 552.

3. HUSBAND AND WIFE.—*Estate by Entireties.*—The distinctions and peculiarities which distinguish estates by entireties from other estates rest upon the common law fiction in which husband and wife are regarded as one person. pp. 552, 554.

4. HUSBAND AND WIFE.—*Estate by Entireties.—Seisen.*—By reason of the common law fiction that husband and wife are one person, each is incapable of holding any separate interest in an estate conveyed to them jointly, but each becomes seized of the whole, and the survivor holds the entire estate by virtue of the original grant or devise, and not by virtue of any right which he acquires as survivor. p. 553.

5. HUSBAND AND WIFE.—*Estate by Entireties.—Rights of Survivor. —Indefeasibility.*—Although an estate in joint tenancy may be severed or destroyed by the act of one of the tenants so as to defeat the right of survivorship of the other joint tenant, a tenant by entireties cannot by deed, mortgage, or other act of his

own, defeat the right of the surviving tenant to hold the entire estate. p. 554.

6. HUSBAND AND WIFE.—*Wife's Separate Estate.—Rights of Husband.*—At common law, the husband, during coverture, had the right to the possession and control of the real estate owned by the wife, as well as lands held by them by entireties, and was the absolute owner of the rents and profits during their joint lives, but this rule has been changed by the married woman's acts (§7851 *et seq.* Burns 1908, §5115 *et seq.* R. S. 1881.)   p. 555.

7. HUSBAND AND WIFE.—*Estate by Entireties.—Rights of Husband. —Rents and Profits.—Execution Against Husband.*—Since, by reason of the provisions of the married woman's acts, §7851 *et seq.* Burns 1908, §5115 *et seq.* R. S. 1881, the husband is no longer entitled to the possession and control of the separate real estate of the wife, nor to the rents and profits thereof during coverture, he is not the owner of the rents and profits of an estate held by himself and wife by entireties, and has no separate right to the possession and proceeds thereof which he can individually dispose of or incumber, or which can be sold on execution for his debts. p. 556.

8. HUSBAND AND WIFE.—*Estate by Entireties.—Termination.*—An absolute divorce terminates an estate by entireties and converts the same into an estate in common. p. 557.

9. HUSBAND AND WIFE.—*Estate by Entireties.—Statutes.*—By §3954 Burns 1908, §2923 R. S. 1881, excepting conveyances to husband and wife from the operation of §3953 Burns 1908, §2922 R. S. 1881, providing that conveyances to two or more persons shall be construed to be estates in common unless it manifestly appears that the creation of a joint tenancy was intended, the estate by entireties is preserved as it existed at common law. pp. 557, 562.

10. HUSBAND AND WIFE.—*Estate by Entireties.—Sale on Execution.*—Although neither an estate by entireties, nor the possession and proceeds of such estates, can be sold to satisfy a judgment against one of the individual tenants, such an estate is subject to sale on execution issued on a judgment rendered against both the husband and the wife. pp. 558, 565.

11. COURTS.—*Supreme Court.—Binding Effect of Decisions.—Obiter Dictum.*—While the decisions of the Supreme Court are of binding force on the Appellate Court, language used by the former in rendering an opinion, but which was not essential to a determination of the question presented, will be regarded by the latter as merely advisory. p. 563.

12. HUSBAND AND WIFE.—*Unity.—Separate Legal Entity.—Estate by Entireties.*—The unity of husband and wife recognized by the common law is not a separate legal entity, distinct from either the husband or the wife, or both combined, in which an estate by

entireties vests, but such estate is held by husband and wife *per my et non per tout,* each owning the whole, but neither owning any divisible part. p. 563.

13. BILLS AND NOTES.—*Joint Liability.—Action.—Parties.*—A note, which binds all the obligors jointly to perform, is a* joint obligation, and an action thereon must be brought against all the obligors jointly. p. 567.

14. BILLS AND NOTES.—*Action.—Parties.—Nonjoinder.—Objection.* —A joint maker of a note, when sued alone, can only object to the nonjoinder by the others by plea in abatement, unless the defect appears on the face of the complaint, in which case the objection may be raised by demurrer. p. 568.

15. JUDGMENT.—*Judgment on Joint Obligation.—Merger of Causes of Action.—Modification of Common Law Rule.*—The common law rule that only one judgment could be rendered on a joint obligation, and if rendered against one or more of the joint obligors, that it had the effect to merge the cause of action as to all, has been modified by §325 Burns 1908, §321 R. S. 1881, providing that, where judgment is rendered only against part of the persons liable on a joint obligation, because the others were not summoned and did not appear, the plaintiff may proceed against those who were not summoned and did not appear, in the same manner as if they were alone liable. p. 568.

16. BILLS AND NOTES.—*Joint and Several Liability.—Actions.— Parties.*—An obligation is joint and several when it binds the obligors jointly and separately, and the obligee may maintain a joint action against all, or a separate action against each. p. 569.

17. JUDGMENT.—*Judgment on Joint Obligation.—Execution.—Common Law Rule.*—A judgment recovered on a joint obligation is joint, and at common law, the execution thereon, being required to follow the judgment, must be joint. p. 569.

18. EXECUTIONS. — *Joint Executions. — Statutes.* — Although, in speaking of the judgment debtor, the singular number is employed in §716 Burns 1908, §674 R. S. 1881, which modifies writs of execution, so as to conform to that act, and in §718 Burns 1908, §676 R. S. 1881, which provides that there shall be three kinds of executions—one against the property of the judgment debtor, one against his person, and one for the delivery of the possession of real or personal property, etc.,—no legislative intent is thereby indicated that all executions shall be several and that joint executions are not authorized. p. 569.

19. STATUTES.—*Construction.*—Under the provisions of §1357 Burns 1908, §1286 R. S. 1881, it is a well settled rule of construction that words used in the singular number include also the plural. p. 569.

20. JUDGMENT.—*Joint Judgment.—Enforcement.—Execution.*—Section 324 Burns 1908, §320 R. S. 1881, provides for the enforce-

ment of a joint judgment against the joint property of the judgment defendants, and this can only be done upon a joint execution.  p. 570.

21.  EXECUTION. — *Sale.* — *Redemption.* — *Tenants by Entireties.*— Tenants by entireties have no separate interest in the land which is subject to redemption after sale on execution, but the land can only be redeemed as a whole.  p. 571.

22.  EXECUTION.—*Exemption.*—*Estate by Entireties.*—The right of an execution defendant to claim property as exempt, extends only to property in which he has an individual interest, so that, as against a joint execution· levied on property held by entireties, neither tenant can claim the property or any part thereof as exempt.  p. 571.

From Jackson Circuit Court; *John M. Lewis,* Judge.

Action by Finch Sharpe and another against Celestus Baker and others.  From a judgment for defendants, the plaintiffs appeal.  *Affirmed.*

*M. M. Bachelder* and *Branaman & Branaman,* for appellants.

*Thomas M. Honan* and *Applewhite & Robertson,* for appellees.

LAIRY, J.—This action was brought by appellants, who are husband and wife, to quiet their title as tenants by the entireties to the real estate described in the complaint, and also to eject appellees Morgan P. Baker and Celestus Baker, his wife, from the possession of said real estate, and to set aside and cancel a certain mortgage on said real estate executed by said Baker and wife to appellee James B. Thompson.

The complaint was in the usual form, and no question is raised as to its sufficiency.  The defendant filed a second paragraph of answer, to which appellants addressed a demurrer for want of facts.  The trial court overruled this demurrer, to which ruling appellants excepted, and refusing to plead further, judgment was entered against them for costs.  The only question presented for decision is the sufficiency of this paragraph of answer.

Sharpe *v.* Baker—51 Ind. App. 547.

From the pleadings it appears that a joint judgment was taken against appellees at a time when they were the owners as tenants by the entirety of the real estate in controversy, and that an execution was issued on said judgment against both of said appellants, and levied on the estate so held by them as entireties. It further appears that said land was regularly advertised and sold under said execution as the property of appellants, and that after the year of redemption had expired the sheriff made a deed for said real estate to the purchaser at said sale on execution. Appellees Baker and wife claim title and possession under and by virtue of said sheriff's deed, while appellants claim that the estate held by them as tenants by the entireties was not subject to sale on execution, and that the sheriff's deed, based on such levy and sale, did not have the effect to divest their title, and that they are still the owners thereof as tenants by the entireties. If the real estate held by appellants as tenants by the entireties was subject to levy and sale in satisfaction of a joint judgment rendered against them, then the demurrer to said paragraph of answer was properly overruled; but, if it was not subject to levy and sale in satisfaction of said judgment the demurrer should have been sustained.

The question we are thus called on to decide is entirely new. The industrious and able attorneys who have briefed this case and argued it orally before the court have been unable to cite a case from any court in which the question has been decided. The writer of this opinion has made diligent search in the hope of finding a decision of some court which might serve as a precedent, but without avail. We must therefore determine this question from a consideration of the legal principles which relate to the creation of estates by the entireties, and which govern the rights and liabilities arising therefrom as affecting the holders of such estates.

It is claimed by appellants that an estate by entireties has been always regarded by the courts as one created for the enjoyment of the husband and wife during coverture,

and that such an estate was intended to be preserved for the use of the family as a homestead, and that it should be protected by the courts against the improvidence of either or both, to the end that it may be so preserved. This contention has led us to inquire as to the source and origin of estates by entireties. At common law such estates were treated as a species of joint tenancy. ''An estate in joint tenancy is an estate held by two or more tenants jointly, with an equal right in all to share in the enjoyment of the land during their lives. Upon the death of any one of the tenants, his share vests in the survivors. Four requisites must exist to constitute a joint tenancy, viz.: First. The tenants must have one and the same interest. Second. The interests must accrue by one and the same conveyance. Third. The interests must commence at one and the same time. Fourth. It must be held by one and the same undivided possession. 6 Am. and Eng. Ency. Law 891. A joint tenancy can be created in no other way than by purchase, and its distinguishing feature is that of survivorship.'' *Case* v. *Owen* (1894), 139 Ind. 22, 38 N. E. 395, 47 Am. St. 253. In the ancient language of the law, joint tenants were seized of the estate *per my et per tout*, that is to say, each was the owner of his equal share for the purpose of immediate alienation, but for the purpose of possession and survivorship each owned the whole. 1 Preston, Estates *136; *Wilkins* v. *Young* (1896), 144 Ind. 1, 41 N. 68, 41 N. E. 590, 55 Am. St. 162.

By a fiction of the common law, the husband and wife were regarded as one person, the legal existence of the wife being suspended during coverture, or at least incorporated and consolidated into that of the husband. 1 Blackstone's Comm. *442. Upon this legal fiction of the unity of husband and wife rests all the distinctions and peculiarities which distinguish the estate by entireties from other joint estates. ''It is the legal notion of unity of two persons, who are husband and wife, which gives occasion

to the construction of an entirety of interest on their tenancy.'' 1 Preston, Estates *132. An estate by entireties is created when a husband and wife take an estate to themselves jointly by grant or devise, or by limitation of a use made to them during coverture. 1 Preston, Estates *131. On account of the unity of persons of husband and wife by marriage, they take the estate as one person, and so where an estate was limited to a husband and wife and to a third person jointly, such third person,· as against the husband and wife, became an owner as joint tenant of the one-half of the estate, and the husband and wife became the owners of the other one-half as tenants by entireties as between themselves, but as to such third person they held as joint tenant.

By reason of the common law fiction heretofore mentioned, the husband and wife, being one person in law, were each incapable of holding any separate interest in an estate so acquired. They could not take by moieties, they were each siezed of the whole, and neither was seized of any divisible part, and so, as a consequence of the unity of their persons, they were said to hold such estate *per my et non per tout.* 2 Blackstone's Comm. *182. The right of the survivor to take the whole estate is common, both to estates in joint tenancy and estates by entireties; but the right by which the survivor holds in each is not the same. If a joint tenant dies during the existence of the joint tenancy, his moiety goes to the survivor by the *jus accrescendi,* or right of survivorship; but when a tenant by entirety dies, the survivor holds the entire estate, not by virtue of any right which he acquires as survivor, but by virtue of the original grant or devise. On the vesting of an estate by entireties, both tenants, by reason of the unity of their person by marriage, become seized of the whole estate, and neither is seized of any divisible part thereof; and therefore on the death of one, the survivor, being already seized of the whole, can acquire no new or additional interest by virtue

of his survivorship. *Beddingfield* v. *Estill & Newman* (1906), 118 Tenn. 39, 100 S. W. 108, 9 L. R. A. (N. S.) 640.

An estate in joint tenancy may be severed or destroyed by the act of one of the tenants so as to defeat the right of survivorship of the other joint tenant; but a tenant

5. by the entireties cannot, during coverture, by deed, mortgage, devise, or other act of his own, defeat the right of the surviving husband or wife to hold the entire estate. This necessarily follows as a consequence of the unity of the husband and wife which prevents either from holding any moiety or divisible interest capable of being divested by the individual act of either.

There may be other distinguishing characteristics of the estate by the entireties to which we have not referred; but we think we have gone far enough to show that every

3. peculiarity incident to such estates, distinguishing them from estates in joint tenancy, can be traced to the fiction of the unity of husband and wife. We therefore conclude that the estate by entireties was originally a modified form of joint tenancy, and that the modifications recognized were rendered necessary by the common law unity of husband and wife. We find nothing in the origin of the estate to indicate that any of the incidents peculiar to said estate rested upon any reason of public policy. It is true that the courts held that one of the tenants alone could not dispose of the estate or incumber it so as to defeat the right of the other to hold as survivor; but the reason of the rule grew out of the necessities created by the nature of the estate and by the legal unity of the tenants by which it was held. The reason for such rule did not arise out of any tender consideration by the courts for such estates more than others, or out of any policy of the law to preserve such an estate for the use of the family during the coverture of the husband and wife. There is nothing in the manner in which such estates have been treated by the courts in later times to indicate that it was the policy of the courts to preserve

them to the families. Before the married woman's
6.  act, the husband during coverture had the right to the
    possession and control of the real estate owned by his
wife, and this right was held to extend to land held by en-
tireties. *Beach* v. *Hollister* (1875), 3 Hun 519; *Hall* v.
*Stephens* (1877), 65 Mo. 670, 27 Am. Rep. 302; *Davis* v.
*Clark* (1866), 26 Ind. 424, 89 Am. Dec. 471. As the hus-
band was, before the married woman's acts, the absolute
owner of the rents and profits of such estates during the
joint lives of himself and his wife, this right, according to
the weight of authority, could be sold, on execution, for his
debts. *Ames* v. *Norman* (1857), 4 Sneed (Tenn.) *683, 70
Am. Dec. 269; *Bennett* v. *Child* (1865), 19 Wis. *362, 88
Am. Dec. 692; *Fleek* v. *Zillhaver* (1887), 117 Pa. St. 213,
12 Atl. 420; *Beach* v. *Hollister, supra; Snyder* v. *Sponable*
(1841), 1 Hill (N. Y.) 567; *Farmers, etc., Bank* v. *Gregory*
(1867), 49 Barb. (N. Y.) 155.

In the case of *Davis* v. *Clark, supra,* the court used the
following language: ''By the common law the husband, by
virtue of the marriage, acquired an estate, at least during
their joint lives, in the real estate of the wife, and if he
became tenant by *courtesy initiate,* by the birth of a child,
then during his own life, and was entitled to the possession
and use thereof. He could convey such interest without
the assent of the wife, and under the statute it was subject
to sale on execution for the husband's debts. And it would
seem from the authorities that by the common law the hus-
band would also be entitled to the possession, use and control
of lands granted to him and his wife jointly, in the same
manner, during their joint lives, and could convey the use
and possession for the same term. But the authorities on
this point are not uniform. See, 2 Kent, Comm. 132, 133.
In *Torrey* v. *Torrey* [1856], 14 N. Y. 430, in reference to
this question, it was said by Denio, C. J.: 'The husband,
while he lived, could not by any act of his impair or preju-
dice the right of survivorship of the wife. He had the abso-

lute control of his wife's estate for his own life, but no longer. At his death she became the owner of the whole as survivor.' The same rule is stated in Washburn, on Real Property, side page 425, title 'Estates in Entirety.' To the same effect is *Jackson* v. *Stevens* [1819], 16 Johns [N. Y.] *110. A contrary opinion is expressed in *Doe* v. *Howland* [1828], 8 Cowen [N. Y.] *277 [18 Am. Dec. 445], and in *Bevin* v. *Cline's Admr.* [1863], 21 Ind. 37. But it is not necessary that we should decide this question here, for the reason that if such were the rights and powers of the husband at common law, they are changed by statute in this state. The statute enacts that 'no lands of any married woman shall be liable for the debts of her husband, but such lands and the profits therefrom shall be her separate property, as fully as if she was unmarried; provided that such wife shall have no power to incumber or convey such lands, except by deed, in which her husband shall join.' And again: 'The separate deed of the husband shall convey no interest in the wife's land.' Under these provisions of the statute it is evident that the husband does not, by virtue of the marriage, acquire any legal interest or estate in the lands of the wife, but the same, and the profits thereof, remain her separate property.''

By statutory enactment in this State, married women have been emancipated from most of the common law disabilities. As a result of such statutes the husband is no longer 7. entitled to the possession and control of the separate real estate of his wife, and, therefore, he has no right to the rents and profits thereof during coverture. By force of the same reasoning, it must be true that the husband, under our statute, is not the owner of the rents and profits of estates held by himself and wife as tenants by the entireties, and that he has no right to the exclusive possession and control thereof during coverture. It has therefore been correctly held in this State, since the enactment of the statutes referred to, that the husband has no separate right to the

possession and proceeds of entirety property which he can individually dispose of or incumber, or which can be sold on execution for his debts. *Chandler* v. *Cheney* (1871), 37 Ind. 391; *Jones* v. *Chandler* (1872), 40 Ind. 588. It is accordingly held that a crop raised on land held by husband and wife as tenants by entireties is owned by them in the same manner as the land itself, and that such crop is not subject to levy and sale on an execution against the husband. *Patton* v. *Rankin* (1879), 68 Ind. 245, 34 Am. Rep. 254. As an estate by entireties can be created only as between 8. husband and wife, and is dependent entirely on the unity of their persons by marriage, anything which has the effect of destroying this unity during their lives destroys the estate. Thus it is held in this State and in most states that an absolute divorce converts such an estate into an estate in common. *Ames* v. *Norman, supra; Hayes* v. *Horton* (1905), 46 Or. 597, 81 Pac. 386; *Russell* v. *Russell* (1894), 122 Mo. 235, 26 S. W. 677, 43 Am. St. 581; *Hopson* v. *Fowlkes* (1893), 92 Tenn. 697, 23 S. W. 55, 23 L. R. A. 805, 36 Am. St. 120; *Harrer* v. *Wallner* (1875), 80 Ill. 197; *Lash* v. *Lash* (1877), 58 Ind. 526.

While the statutes of this State have removed most of the common law disabilities of a married woman, the common law unity of husband and wife is preserved, in so far 9. as that fiction is necessary to uphold the estate by entireties. By §3954 Burns 1908, §2923 R. S. 1881, conveyances to husband and wife are expressly excepted from the operation of the preceding section, which provides that conveyances of land, to two or more persons, except as provided in the following section, shall be construed to create estates in common and not in joint tenancy, unless it manifestly appears from the tenor of the instrument that it was intended to create a joint tenancy. The estate by entireties as it existed at common law is therefore preserved by our statute. *Bevin* v. *Cline's Admr., supra; Carver* v. *Smith* (1883), 90 Ind. 222, 46 Am. Rep. 210.

Rights to exemptions and to homesteads are created by statute, and evince an intention on the part of the legislature to protect the property, to which such rights apply, from the improvidence of the owner, and to preserve it for the use of the family. The estate by entireties was not created by statute in this State, but is preserved by statute as it existed at common law. It cannot, therefore, be inferred that the legislature, by the enactment of the statute preserving such estates, intended that it should be exempt from sale on execution to any greater extent than it was by the rules of the common law; but, as we have heretofore shown, the legislature by other statutes has so modified the common law in respect to the right of the husband to the possession and usufruct of the separate estate of his wife as to make the husband and wife tenants by entireties in the possession and proceeds of the estate as well as in the estate itself. As a result of such modification the possession and proceeds of such estates cannot be sold on execution for the individual debt of either the husband or the wife; not because they are exempt by statute, but because neither has any separate individual interest therein. The entirety property cannot be sold to satisfy a judgment against one of the individual tenants for the same reason that one man's property cannot be sold on execution issued on a judgment against another.

From what has been said, we think it is apparent that an estate by entireties is subject to sale on execution issued on a judgment rendered against both the husband and the wife, unless some reason can be found arising out of the very nature of the estate which prevents such a result. The reason that it cannot be sold in satisfaction of a judgment rendered against either of the tenants alone is apparent from the inherent nature of the estate. Neither owns any severable interest therein. But what reason can be suggested, growing out of the nature or incidents of the estate, which could prevent a sale on execution to satisfy a joint

debt of both? By their joint deed they can dispose of their estate; and by their joint mortgage they can incumber it. Jointly, they have the complete ownership of the estate with full power to control and dispose of it at will, and it is a general rule that property so owned is subject to sale on execution to satisfy a judgment against the owner.

In reaching this conclusion, we have not overlooked an expression of the Supreme Court of our State, which at first blush appears to be somewhat at variance with the reasoning in this case. The language to which we refer is used by Buskirk, J., in the opinion in the case of *Chandler* v. *Cheney, supra,* 409, and is as follows: "During the constitutional convention of 1850, there was an able and exhaustive discussion of the rights of husband and wife. The convention very wisely left the whole question to the legislature. The legislature of 1851-2 assembled soon after the ratification of the constitution by the people. Many of the most influential and distinguished members of the convention were members of this legislature. Upon this body was imposed the delicate and arduous duty of revising the laws of the state, and making them conform to the provisions of the new constitution. Estates at common law had been divided and subdivided, until it was almost impossible for even the best of lawyers to understand the laws. Many of the rules were arbitrary and artificial, and unsuited to our system of government. By the common law, the husband had the absolute control over the property, real and personal, of the wife. That legislature abolished tenancies by curtesy in the husband and dower in the wife, and gave the wife one-third in fee, subject to certain limitations and restrictions. It secured to the wife her separate estate in her lands, and deprived the husband of the power of alienating or encumbering it, without her consent and concurrence. It secured to the wife the rents and profits of her separate estate, and declared that it should not be seized and sold upon execution for the debts of the husband. It abolished estates

tail. It modified the common law in reference to joint tenancies, by providing that a joint deed to two or more should be construed to be tenancies in common, unless the intention to create a joint tenancy was expressly declared in the deed, or was made manifestly to appear from the tenor of the instrument. But it did not abolish estates by entireties as between husband and wife, but provided that when a joint deed was made to husband and wife, they should hold by entireties, and not as tenants in common or as joint tenants. The legislature evidently had some purpose in continuing this peculiar estate. What was the purpose? In ascertaining the legislative intention we are required to take into consideration the entire scope of legislation during that session. There was a strong and determined purpose manifested to guard and protect the rights of married women. It is quite obvious to us, that the evident and manifest intention of the legislature in providing for the continuance of estates by entireties, as between husband and wife, when joint tenancies between persons who were not married had been virtually abolished, was to provide a mode in which a safe and suitable provision could be made for married women. Various expedients had been resorted to, to effect the same object. Husbands and fathers who desired to provide for sons and daughters had made and caused to be made deeds to trustees in trust for married women, but the more common practice was to make the deeds directly to the wife. Neither of these plans operated well. There was too much machinery and complication about the first. The second was attended with baneful and disastrous consequences. It disturbed the peace and harmony of families. It was an element of strife, contention, and discord. It placed too much power in the wife, and gave her too much control over domestic matters. It destroyed the independence of the husband by making him subordinate to the wife. To remedy this condition of things the legislature continued this estate. It is true that it had existed at com-

mon law, but was not very clearly defined or understood, and as it had been regarded as a joint tenancy, and as the virtual abolition of this tenancy would have destroyed estates by entireties, unless expressly saved by the statute, it was so saved and perpetuated. The manifest intention of the legislature was to provide by positive enactment a mode in which a homestead could be created and preserved. It should be the earnest desire of every husband and father to provide a home for his wife and children and a place of repose for himself in his declining years. The power, strength, and prosperity of a state depend upon the peace, happiness, and prosperity of the families of the state. An estate by entireties is better calculated to produce an unity of feeling and interest than any other. It is a bond of union between husband and wife. The homestead does not belong to one to the exclusion of the other. There is no feeling of dependence on the part of the husband, as when the title is vested in the wife, and yet it makes each dependent on the other and produces a feeling of conciliation and forbearance. It makes the husband, the wife, and the children feel a joint and common interest in improving, adorning, and preserving their common home. It will inculcate habits of industry and economy. It is the common home of all the household during the joint lives of the husband and wife; and upon the death of either, the survivor takes the whole estate, and thus it continues to be the homestead. But when the title is vested exclusively in the wife, upon her death it will descend, one-third to the husband, and two-thirds to the children, and thus the estate is divided and often wasted, and the home is broken up." This case is cited on this point in two later cases, where language of similar import is used.

It is apparent from the language quoted that the judge who wrote the opinion thought that the ancient estate by entireties was in some way affected by the statute except-

ing it from the operation of the statute modifying the common law rule as to the creation of joint estates. It must be borne in mind that the legislature did not, by statute, create this estate. This estate, together with certain other forms of estates recognized by the common law, was already in existence. The legislature abolished some of these estates and modified the common law rule in reference to the creation of joint estates, but it left the estate by entireties where it found it. Nothing was added, and nothing was taken away. Its nature and inherent qualities were not changed; it remained as it had previously existed, unaffected by this statute. It is to be presumed that the legislature was familiar with the nature and incidents of estates by entireties as the same existed at common law, and that the results of retaining such estates unaffected was within the contemplation of the lawmakers. If it had been the intention to change its nature, or to invest the estate with new qualities which would render it exempt from sale or execution, it seems reasonable to believe that some apt words would have been employed to indicate such an intention.

The language used is not obscure or uncertain in its meaning, and there is no room for the application of the rule of statutory construction invoked. It is certainly true, as suggested by the learned judge, that the legislature had some purpose in preserving this estate; but that purpose is so clearly apparent from the act itself as to leave no occasion for speculation on the subject. The nature of the estate was well known, and the consequences which would result from its preservation were well understood. Why, then, is it necessary to resort to a consideration of other laws passed at the same session, or to engage in a discussion of the beneficent influences of such estates on the home, in order to reach a conclusion that the legislature which passed the act intended, by the retention of this estate without change, to create a homestead exemption, and thereby reach a conclusion which could not be reached from a con-

sideration of the nature and inherent qualities of the estate.

The language quoted from the opinion in the case of *Chandler* v. *Cheney, supra,* was not necessary to a decision of any question involved. The part of the opinion quoted is a discussion by the writer of an abstract proposition of law not applicable to the determination of any question before the court for decision. We recognize the binding force of decisions of the Supreme Court, but do not feel bound to approve all the language used in the opinions, especially·where it appears that the reasoning employed was not necessary in order to reach a determination of the questions presented. In speaking on the subject, Huston, J., said in *Frants* v. *Brown* (1828), 17 Serg. & R. (Pa.) 287, 292: "If general *dicta* in cases turning on special circumstances, are to be considered as establishing the law, nothing is yet settled or ever can be long settled. An eminent judge (Benson) has left us, in one of the *New York* cases, an animated appeal against charging him as liable for the correctness of *dicta,* on points not trying; and I join him, most cordially. What I have said or written out of the case trying, or shall say or write in such circumstances, may be taken as my opinion at the time, without argument or full consideration; but, I will never consider myself bound by it when the point is fairly trying and fully argued and considered. And, I protest against any person considering such *obiter dicta* as my deliberate opinion." We regard this dictum as merely advisory and not controlling, and as we can neither assent to the reasoning employed nor approve of the result to which it leads, we respectfully decline to adopt it.

It is suggested by the learned counsel that the unity of husband and wife recognized by the common law is to be regarded as a separate legal entity, distinct from either the husband or the wife, or both combined. It is insisted that the estate by entireties belongs to this legal entity, and that this entity is represented by the hus-

band and wife in much the same way as the directors and officers of a corportion represent such corporation. Taking this proposition as a basis, it is argued that when the husband and wife acting jointly execute a deed conveying the entirety property, or a mortgage incumbering the same, they are presumed to be representing such estate and to be acting in its behalf. It is also argued that where they incur a debt for the improvement or betterment of such estate, and this is alleged and proved, such debt will be held to bind the estate, on the ground that in creating the debt the husband and wife were acting for and on behalf of the estate. The conclusion reached by such argument is, that where it does not appear that the joint debt was created for the benefit of such estate, such estate cannot be subjected to its payment. This argument is an ingenious one, and it reflects much credit on the intelligence and learning of counsel; but, from a careful consideration of the nature and qualities of the estate we are considering, and the effect which has been given to it by well-settled judicial decisions, we are convinced that it is erroneous. The entire argument is founded on the basic principle assumed, that the unity of husband and wife constitutes a separate legal entity, distinct from either or both, and that the estate by entireties is the property of this legal entity. If this principle is sound, the argument of counsel is unanswerable, and the conclusion reached is inevitable; but if the principle assumed is unsound, then the whole argument based thereon must fall.

From the very origin of this estate to the present time it has been held that the estate was held and owned by the husband and wife *per my et non per tout.* That is to say, the husband owned the whole and the wife owned the whole, but neither owned any divisible part. If this is true, then it cannot be true that the estate belonged to a legal entity separate and distinct from both; as in that event neither

the husband nor the wife could own the whole of the estate, but the whole would belong to such legal entity.

It has been held uniformly that the right of survivorship is one of the incidents of estates by entireties, and that the surviving tenant takes the whole of such estate, not by the *jus accrescendi* as a joint tenant, but on the theory that the title to the whole estate vested in each one of said tenants at the time of the creation of the estate. If the title rested in a separate entity, as supposed, it would seem to be doubtful whether the surviving tenant could take the whole; but if he did, it is apparent that he would take the title which had been previously vested in this separate entity, and would not take on the theory that the title to the estate had rested in each one of the tenants throughout the continuance of the tenancy.

At common law the husband was entitled to the usufruct of the separate real estate of his wife, and this rule was extended to include estates held by the husband and wife as tenants by the entireties. If the title to such estates had rested in a separate legal entity, this rule could not have obtained. No court, so far as we are advised, has ever held that the estate by entireties vests in a legal entity distinct from both the husband and the wife, and we cannot so hold, without going counter to many principles of law long recognized and applied by the courts.

There is a popular notion to the effect that estates by entireties cannot be subjected to the payment of debts unless it is made to appear that such debt was created 10. for the benefit of such estate. This idea arises from a misapplication of the law applicable to the separate estates of married women. At common law a married woman could not bind herself by contract, and therefore no personal judgment based on contract could be rendered against her; but where it appeared that such married woman had a separate estate, and that such contract was made for its im-

provement or betterment, then the debt so created was held
to be a claim against such separate estate enforcible in
equity. The proceeding in such a case was against the es-
tate and not against the owner, and in order to bind the
estate in equity it was necessary to show that the consider-
ation moved to the estate. A married woman had no power
to bind herself by contract so as to create a personal respon-
sibility enforcible by a personal judgment against her, and
the rule we have stated resulted as a necessary consequence.
In this State, the reason for the rule no longer exists. Under
our statutes a married woman may bind herself personally
by contract, and a personal judgment may be rendered and
enforced against her the same as though she were sole. The
reason for the rule having disappeared, the rule no longer
exists. Under the statutes of this State a married woman
may bind herself by contract and create a personal liability
which may be enforced by a personal judgment against her.
In the case at bar, a personal judgment was taken against
Finch Sharpe and Mintie Sharpe on a debt for which each
was personally liable. The question of suretyship of the wife
is not involved. The land sold on execution to satisfy this
judgment was owned by the judgment debtors as tenants by
the entireties. It is our opinion that the land so held by
the judgment debtors was liable to be sold on execution to
satisfy this judgment. The court did not err in overruling
the demurrer to appellees' second paragraph of answer.

Judgment affirmed.

## On Petition for Rehearing.

Lairy, J.—On petition for rehearing, counsel for appellant
objects to the opinion of the court, on the ground that it
assumes that the execution on which the real estate in con-
troversy was sold was a joint execution, founded on a joint
judgment against the husband and wife who owned the land
as tenants by entireties. It is asserted that our statutes on
the subject of execution do not authorize a joint execution to

be issued on a joint judgment, and that if such a one is issued, the rights of levy and sale thereunder are not greater than they would be under separate executions issued against each of said judgment debtors.

From the answer in this case it appears that the judgment on which the execution was issued was based on a promissory note executed by Finch Sharpe and Mintie Sharpe, whereby they promised to pay A. F. Thompson $400, with interest thereon and attorney's fees; that on said day they executed a mortgage on certain real estate therein described, for the purpose of securing said note, and that said defendants expressly agreed and promised to pay the sum of money thereby secured. It does not appear whether the real estate mortgaged was owned by Sharpe and his wife as tenants by the entireties, or whether it was owned by him in his own right. An action was brought on this note and to foreclose this mortgage, and the court found that the plaintiff was entitled to recover of defendant Finch Sharpe and Mintie Sharpe on the note sued on in the sum of $477.76 and the further sum of $50 attorney's fees, together with costs, and a judgment was rendered against both defendants for $527.76. A decree was entered foreclosing said mortgage, and the land was sold on the decree of foreclosure for the sum of $400, and that amount was credited on the judgment, leaving a balance due of $185.75.

The execution issued on this judgment shows that James B. Thompson and John M. Thompson, as executors, recovered a judgment against Finch Sharpe and Mintie Sharpe, on which there is still due the sum of $185.08, and ordered the sheriff to levy said sum of money of the property of the aforesaid defendants found in his bailiwick subject to execution.

It thus appears that the note on which the judgment was rendered was a joint note. An obligation is joint

13. when it binds all the obligors jointly to perform. An action to enforce such an obligation must be brought

against all the obligors jointly and cannot be maintained against one without joining the others. But a joint maker sued alone can only object to the nonjoinder of the others by plea in abatement, unless the defect appears from the face of the complaint, in which case it may be raised by demurrer for defect of parties defendant. 3 Randolph, Com. Paper §1665 and cases cited.

At common law only one judgment could be rendered on a joint obligation. A judgment rendered on such an obligation against one or more of the joint obligors had the effect to merge the cause of action as to all. *Erwin* v. *Scotten* (1872), 40 Ind. 389; *Barnett* v. *Juday* (1871), 38 Ind. 86; *Kennard* v. *Carter* (1878), 64 Ind. 31; *Crosby* v. *Jeroloman* (1871), 37 Ind. 264; *Lingenfelser* v. *Simon* (1874), 49 Ind. 82; *Capital City Dairy Co.* v. *Plummer* (1898), 20 Ind. App. 408, 49 N. E. 963.

The rule last stated has been modified by a statute in this State, which provides that "in all cases where judgment has heretofore been, or shall hereafter be, recovered against one or more persons jointly liable on contract, but such judgment has been, or shall be, rendered only against part of the persons liable, for the reason that the others were not summoned and did not appear, the plaintiff may proceed against those not summoned and who did not appear, in the same manner as if they were alone liable, but the complaint must allege the facts aforesaid." §325 Burns 1908, §321 R. S. 1881.

In the case of *Erwin* v. *Scotten, supra,* the court, speaking by Buskirk, J., said on page 397: "The makers of a joint note are jointly liable, and the joint property of all and the separate property of each may be sold, but their joint liability cannot be converted into a several liability, as would be the case if separate judgments could be rendered on a joint note."

An obligation is joint and several when it binds the obligors jointly and separately. It is the same as though the parties to it had executed a joint obliga-

tion, and each of the parties had executed a separate obligation. The obligee in such an obligation may maintain a joint action against all, or a separate action against each.

If a judgment is recovered on a joint obligation, it is joint. At common law, the execution must follow the form of the judgment. It the judgment is joint, the execution must be joint. *Graham* v. *Smith* (1825), 1 Blackf. *414; *M'Coy* v. *Elder* (1828), 2 Blackf. *183; *Saul & Hensinger* v. *Geist* (1865), 1 Woodw. (Pa.) 306; *Shaffer* v. *Watkins* (1844), 7 Watts & S. (Pa.) 219.

Our statute on the subject of execution provides as follows: "Writs of execution, as now used for the enforcement of judgments, are modified in conformity to this act; and any party in whose favor judgment has been heretofore or shall hereafter be rendered may, at any time within ten years after the entry of judgment, proceed to enforce the same as provided in this act." §716 Burns 1908, §674 R. S. 1881. "There shall be three kinds of executions—one against the property of the judgment debtor, one against his person, and one for the delivery of the possession of real or personal property, or such delivery with damages for withholding the same; and executions may be issued to the sheriffs of different counties at the same time; but the plaintiff shall pay the costs upon all executions not necessary to the collection of his judgment." §718 Burns 1908, §676 R. S. 1881.

It is contended that the first section quoted abrogates the common law on the subject of executions, and that we must now look solely to the statute for the form of the execution. It is also contended that the section last quoted indicates an intention on the part of the legislature that all executions for the enforcement of a judgment shall be several, and that joint executions are not authorized. This contention is based on the fact that the statute employs the singular number in speaking of the judgment debtor; but it is a well-settled rule of statutory construction that

words used in the singular include also the plural.  §1357 Burns 1908, §1286 R. S. 1881.

By §324 Burns 1908, §320 R. S. 1881, it is provided: "Where the action is against two or more defendants, and the summons is served on one or more, but not all of them, the plaintiff may proceed as follows: First.

If the action be against defendants jointly indebted on contract, he may proceed against the defendant served; and if he recover judgment it may be enforced against the joint property of all and the separate property of the defendant served." This section provides for the enforcement of a joint judgment against the joint property of the judgment defendants.  This can be done only on a joint execution.  Where a joint execution is levied on the interest of two cotenants in real estate, it has been held in one case that the interest of each in the land must be separately sold, and that a sale in one parcel was void.  These several sales were said to be necessary in order to enable each cotenant or his creditors to redeem his moiety. *Ballard* v. *Scruggs* (1891), 90 Tenn. 585, 18 S. W. 259, 25 Am. St. 703.  Appellants argue that this rule should apply to the respective interest of the husband and wife in lands held by them as tenants by the entireties, and that as neither the husband nor the wife has any such interest therein as can be sold separately, their joint interests cannot be sold.

In 2 Freeman, Execution (3d ed.) §172b, the learned author questions the correctness of the rule announced in the case of *Ballard* v. *Scruggs, supra,* and says: "We are not inclined to accept the decision that the interests of the respective defendants in the same parcel of real property must be sold separately.  No authority has been cited to support it.  If the judgment was against all the cotenants whose property was sold, each of them was liable for the whole debt, and it was proper to sell his interest for the whole, and neither he nor his creditors have the right to

relieve the property from the whole debt by paying on redemption a moiety of the sum bid at the sale."

The rule announced in the case of *Ballard* v. *Scruggs, supra,* even if sound, can have no application to a case where a joint execution is levied on lands held by tenants by entireties, as the reason given for the rule entirely fails in such a case. Neither of such tenants has any separate interest in the land which is subject to redemption; the land must be redeemed as a whole or not at all.

It is further urged against the opinion that a tenant by entirety is deprived of his right to claim the entirety property or any part thereof as exempt from execution. If this is true, it is not a result of the opinion in this case, but is a result which is incident to the nature of the estate. A tenant by entirety has no separate interest or property in the entirety estate which can be claimed as exempt.

The right of an execution defendant to claim property as exempt extends only to property in which he has an individual interest. For this reason it has been held that a partner cannot claim an exemption in the partnership property. *Love* v. *Blair* (1880), 72 Ind. 281; *Smith* v. *Harris* (1881), 76 Ind. 104; *State, ex rel.,* v. *Emmonds* (1885), 99 Ind. 452; *Ex parte Hopkins* (1885), 104 Ind. 157, 3 N. E. 587. The fact that neither of the tenants by entireties can claim, as exempt, the entirety property or any part thereof, as against a joint execution levied thereon, seems to be a hardship; but the apparent hardship in such a case is not greater than that which results from the inability of a partner to claim as exempt his interest in partnership property. It is the business of the courts to declare the law as it is, and not to make laws to relieve against hardships. If the law as it now is works an injustice, the remedy must be sought in the legislature, and not in the courts.

In passing on the petition for rehearing, each member of

the court has again carefully considered every question involved, and after consultation we are all agreed that the original opinion is correct, and we all concur in the views expressed in this opinion on petition for rehearing.

Petition for rehearing overruled.

NOTE.—Reported in 96 N. E. 627, 99 N. E. 44. See, also, under (1) 23 Cyc. 484; (2) 23 Cyc. 483; (3, 4, 12) 21 Cyc. 1195; (5) 21 Cyc. 1198; (6) 21 Cyc. 1200, 1201; (7, 8, 9) 21 Cyc. 1201; (11) 11 Cyc. 755; (13) 8 Cyc. 90; (14) 31 Cyc. 175, 293; (15) 23 Cyc. 1208, 1209; (16) 9 Cyc. 656; (17, 20) 17 Cyc. 1013; (19) 36 Cyc. 1123. As to the effect of divorce on tenancy by entireties, see 30 L. R. A. 333; 10 L. R. A. (N. S.) 463.