## No. 79SC139

**First National Bank of Southglenn, a national banking corporation v. Energy Fuels Corporation, a Colorado corporation**

(618 P.2d 1115)

Decided September 15, 1980.                    Rehearing denied November 3, 1980.

Jim Travis Tice, for petitioner.

Sharp and Black, P.C., Mary Jane Simmons, for respondent.

*En Banc.*

JUSTICE ERICKSON delivered the opinion of the Court.

We granted certiorari to review the court of appeals' decision in *Chatfield Bank v. Energy Fuels Corp., et al.*, 42 Colo. App. 233, 599 P.2d 923 (1979). The court of appeals interpreted the redemption statute, section 38-39-103(1), C.R.S. 1973, as granting to a judgment creditor of one joint tenant a right to redeem the entire property from a foreclosure sale ahead of lienors who held deeds of trust which were filed after the judgment lien but were executed by both joint tenants on the entire property. We reverse, and remand to the court of appeals with directions.

Ben and Kathleen Pickering owned residential real property in joint tenancy. The respondent, Energy Fuels Corporation (Energy Fuels), held a judgment lien against Ben Pickering. Subsequently, Ben and Kathleen Pickering executed a second deed of trust to Chatfield Bank and a third deed of trust to the petitioner, First National Bank of Southglenn (Southglenn Bank).

The redemption issue was triggered when the Pickerings defaulted on a first deed of trust, and the holder of the deed of trust foreclosed. Energy Fuels, Chatfield Bank, and Southglenn Bank filed timely notice of their intent to redeem the real property, and deposited with the public trustee the required sums to effect redemption. The public trustee concluded that Energy Fuels had the first right to redeem the entire property because its judgment lien was filed first. Chatfield Bank, followed by Southglenn Bank, was entitled to the subsequent redemption rights in the public

trustee's opinion.

As a result, Chatfield Bank filed suit in the district court to restrain Energy Fuels' attempt to redeem Kathleen Pickering's interest in the property ahead of Chatfield Bank and Southglenn Bank. The district court held that Energy Fuels' right to redeem was limited to the undivided interest in the property belonging to Ben Pickering. The district court further found that Chatfield Bank, followed by Southglenn Bank, held the first right to redeem Kathleen Pickering's interest in the real property.

The court of appeals reversed the district court, holding that Energy Fuels had priority to redeem the entire property because its judgment lien was filed first. The court of appeals also held that Chatfield Bank and Southglenn Bank must pay Energy Fuels the amount of the judgment debt owed by Ben Pickering if they sought to redeem the property.

We hold that Energy Fuels only possesses the first right to redeem Ben Pickering's undivided interest in the property and that Southglenn Bank may redeem Kathleen Pickering's undivided interest without paying Ben Pickering's debt to Energy Fuels.[1] In concluding that Energy Fuels had no lien prior to Southglenn Bank on Kathleen Pickering's undivided interest, we rely on the language and purpose of the redemption statute.

■ Section 38-39-103(1), C.R.S. 1973, provides the relevant procedure for lienors to redeem real property after public sale. A creditor holding the senior lien "on the sold premises or *some part thereof* subsequent to the lien upon which the sale was held may redeem" the real property by reimbursing the purchaser of the property. *Id.* (Emphasis added.) Subsequent lienors may also redeem by paying the previous redeemer "all redemption amounts theretofore paid with interest and the amount of all such liens with interest *prior to his own* . . . . *Id.* (Emphasis added.)[2]

■ As a judgment creditor of Ben Pickering, Energy Fuels possessed the right to file a lien against his property. Section 13-52-102(1), C.R.S. 1973. A judgment lienor is entitled to redeem property from a

---

[1] Chatfield Bank was the original plaintiff in this action, but only Southglenn Bank petitioned this Court for certiorari after the court of appeals decision. In this opinion, we only consider the respective redemption rights of Energy Fuels and Southglenn Bank, assuming that Chatfield Bank no longer intends to redeem.

[2] Section 38-39-103(1), C.R.S. 1973, provides in full, that:
"If no redemption is made within the redemption period provided for in section 38-39-102, the encumbrancer or lienor having the senior lien, according to the records of the county clerk and recorder's office of the county where the real estate is situate, on the sold premises or some part thereof subsequent to the lien upon which such sale was held may redeem within ten days after the expiration of the above redemption period by paying the amount required by section 38-39-102, and each subsequent encumbrancer and lienor in succession shall have and be allowed a five-day period to redeem, according to the priority of his lien, and may redeem within the five-day period allotted to him by paying all redemption amounts theretofore paid with interest and the amount of all such liens with interest prior to his own held by such persons as are evidenced in the manner required in this section or, if no encumbrancer or lienor prior to himself has redeemed, by paying the amount required in section 38-39-102."

public trustee sale. *Patterson v. Serafini*, 187 Colo. 209, 532 P.2d 965 (1974). According to the plain language of section 38-39-103(1), Energy Fuels, possessing a lien on "some part" of the sold premises (Ben Pickering's interest), holds the first right to redeem Ben Pickering's interest in the real property. If Energy Fuels had been the only lienor seeking to redeem, or the only person with the right to redeem, it could redeem the whole property. *Leach v. Torbert*, 71 Colo. 85, 204 P. 334 (1922); *Walker v. Wallace*, 79 Colo. 380, 246 P. 553 (1926); Section 38-39-103(1), C.R.S. 1973. In this case, however, another lienor — Southglenn Bank — also has a first right to redeem an interest in the real property.

Southglenn Bank holds a right to redeem the real property because of the debt owed jointly by the Pickerings. Energy Fuels contends that Southglenn Bank must pay Energy Fuels the full amount of its lien held against Ben Pickering's interest in the real property to comply with the redemption statute. The conclusion urged by Energy Fuels contradicts the plain language of the statute.

The redemption statute requires a junior lienor to pay all liens "prior to his own" held by prior redeemers before redeeming the property. Section 38-39-103(1), C.R.S. 1973. Section 13-52-102(1), C.R.S. 1973, states that a properly filed lien attaches to the real property of a judgment debtor.[3] This statute, detailing the real property subject to execution, does not allow a judgment creditor of one joint tenant to enforce his claim against the property interest of the other joint tenant. *See Ziegler v. Bonnell*, 52 Cal.App.2d 217, 126 P.2d 118 (1942); *Neyrey v. Cavallino*, 316 So.2d 866 (La. App. 1975). With a judgment against Ben Pickering, Energy Fuels' lien attached only to his undivided interest in the real property. Energy Fuels had no lien on Kathleen Pickering's interest in the real property. Southglenn Bank's lien, which secured a joint debt, attached to both Ben and Kathleen Pickering's interests. Southglenn Bank held the only lien on Kathleen Pickering's interest in the property. Therefore, we hold that no liens existed on Kathleen Pickering's interest prior to Southglenn Bank, and Southglenn Bank may redeem her interest in the property without paying the amount of Ben Pickering's debt to Energy Fuels.

---

[3] Section 13-52-102(1), C.R.S. 1973, states in full, that:

"All goods and chattels, lands, tenements, and real estate of every person against whom any judgment is obtained in any court of record, either at law or in equity, for any debt, damages, costs, or any other sum of money are liable to be sold on execution to be issued upon such judgment. The transcript of the docket entry of any judgment in the judgment docket, certified by the clerk, may be filed with the recorder of any county; and from the time of filing such transcript the judgment *shall become a lien upon all the real property of such judgment debtor*, not exempt from execution in such county, owned by him or which he may afterwards acquire until said lien expires. The lien shall continue for six years from the entry of judgment unless the judgment is previously satisfied." (Emphasis added.)

Our decision is consistent with the law governing real property held in joint tenancy. Rights in real property held in joint tenancy are fixed and vested in the joint tenants at the time of the creation of the tenancy. *In re Estate of Lee v. Graber*, 170 Colo. 419, 462 P.2d 492 (1969); *Smith v. Greenberg*, 121 Colo. 417, 218 P.2d 514 (1950). A joint tenant cannot alienate, encumber, or transfer the interest of other joint tenants without their consent. *Sullivan's Estate v. Commissioner of Internal Revenue*, 175 F.2d 657 (9th Cir. 1949). Until the joint tenancy is severed, each joint tenant owns an undivided interest in the real property as a whole. C. Smith, *Real Property Survey* 114 (1956). A joint tenancy is severed by destroying one of the four necessary unities of time, title, interest, and possession, either by operation of law, by death, or by the acts of one joint tenant without the consent of the other tenants. 4 *Thompson on Real Property* § 1780 (1976 Repl. Vol.).

When a joint tenant severs the tenancy by conveying his interest without the consent of the other joint tenants, he causes the person acquiring his interest to become a tenant in common with the remaining tenants. *Id.* The same result occurs when the interest of a joint tenant in real property is subject to execution and sale by a judgment creditor. 4A *Powell on Real Property* ¶618 at 676 (1979). The joint tenancy is severed by operation of law by the execution sale and the purchaser becomes a tenant in common with the remaining tenants. *See* 2 *American Law of Property* § 6.2 at 10 (1952). After the execution sale, the property may be partitioned. Section 38-28-101, C.R.S. 1973. If the partition prejudices any interested party, a court may order the sale of the real property and each co-owner will receive their aliquot share of the sale price. Section 38-28-107, C.R.S. 1973. A judgment creditor must recognize that his rights against one joint tenant do not grant him the right to levy an execution against the other joint tenants.

"The individual interest of one joint tenant is subject to levy upon execution against him. While interest of a joint tenant is subject to levy, it is not severed until sale. Such interest may be sold without making the other co-parceners parties to the action. The levy and sale operate as a severance of the joint tenancy, and the purchaser at the sale becomes a tenant in common with the other owners."

4 *Thompson on Real Property, supra*, § 1780 at 37-39. The real property interest of two joint tenants cannot be used to satisfy the judgment creditor of one joint tenant.

Even though the Pickerings owned real property in joint tenancy, Kathleen Pickering's interest could not be used to satisfy Ben Pickering's debt. If the Pickerings had not defaulted on their first deed of trust, Energy Fuels could only enforce its lien through a judicial sale and could only cause Ben Pickering's interest to be sold. The purchaser at the sale would then become a tenant in common with Kathleen Pickering. *See*

*Carmack v. Place*, 188 Colo. 303, 535 P.2d 197 (1975). Energy Fuels, as a judgment creditor, cannot obtain more through redemption than it could by execution, or by other means.

Energy Fuels relies on *Walker v. Wallace*, 79 Colo. 380, 246 P. 553 (1926), which held that a judgment creditor of one of two tenants in common of land had the right to redeem the entire property.[4] While *Walker* provides some guidance for our decision, there are important factual distinctions. The applicable redemption statute in 1926 was markedly different from section 38-39-103(1), C.R.S. 1973.[5] Also, *Walker* concerned only one creditor seeking to redeem. This case involves competing lienholders who each possess a superior lien on separate interests of real property held in joint tenancy.

The policy underlying statutory redemption supports our conclusion. In *Walker v. Wallace, supra* at 382, we stated that, "a liberal construction is to be given the statute allowing redemption, to the end that all property of a debtor may pay as many debts as possible." The statute seeks to benefit both debtors and creditors by reducing the property owner's debt while satisfying every possible creditor through the continual redemption of the same piece of real property. As in *Walker*, we seek to insure that as many debts as possible are paid by allowing both Energy Fuels and Southglenn Bank to redeem the real property according to their respective liens.

Our approach furthers this policy by allowing both Ben and Kathleen Pickering to reduce their joint and separate debts while enabling their creditors to partially satisfy their claims. Otherwise, Kathleen Pickering would be severely prejudiced because her creditor would be forced to pay off Ben Pickering's debt before collecting her debt. The court of appeals decision detracts from this policy by allowing Kathleen Pickering's property to be used to satisfy Ben Pickering's debt while her debt remains unpaid.

Accordingly, we hold that Energy Fuels may redeem Ben Pickering's interest in the real property and that Southglenn Bank may redeem Kathleen Pickering's interest in the property.

Judgment reversed, and cause remanded to the Colorado Court of Appeals with directions to reinstate the judgment of the District Court of Arapahoe County.

---

[4] We stated in *Walker* that, "property which has been sold in an execution sale in its entirety or en masse, if redeemed at all, must be redeemed en masse." *Walker v. Wallace*, 79 Colo. at 384.

[5] Section 5951, Compiled Laws of Colorado 1921 stated that the redeeming lienor must only pay "the amount of money for which said premises shall have been sold." Section 38-39-103(1), C.R.S. 1973, requires this lienor to also pay the "amount of liens prior to his own." This "prior to his own" language forms the basis of our decision and was not present in *Walker*.

JUSTICE LOHR dissents.
CHIEF JUSTICE HODGES and JUSTICE LEE do not participate.

JUSTICE LOHR dissenting:

The majority construes section 38-39-103, C.R.S. 1973, to permit partial redemption from a real property foreclosure sale. I respectfully dissent.

The facts are stated in the majority opinion.

The right of redemption from a real property foreclosure sale is purely statutory. *Walker v. Wallace,* 79 Colo. 380, 246 P. 553 (1926). Thus, we must look to the statute to determine the characteristics of that right. The amount to be paid to effect redemption is specified:

"[The redeeming encumbrancer or lienor] may redeem . . . by paying *all redemption amounts* theretofore paid with interest and the amount of all such liens [liens used to effect prior redemptions] with interest prior to his own . . . ." (Emphasis added.)
Section 38-39-103(1), C.R.S. 1973.

The redemption amounts include "the sum for which the property was sold, with interest from the date of sale at the rate specified in the original instrument, together with any taxes paid or other proper charges as now provided by law, . . . ." Section 38-39-102, C.R.S. 1973.[1] They also include amounts paid by prior encumbrancers or lienors to effect redemption. Section 38-39-103, C.R.S. 1973. The statute does not authorize the holder of a judgment lien on the interest of one of two joint tenants to redeem such interest by paying *half* of the redemption amounts.

The clear prescription of the amount to be paid removes any ambiguity in the term "liens . . . prior to his own." Section 38-39-103(1), C.R.S. 1973. Because redemption of the entire interest sold at foreclosure sale by payment of all redemption amounts is the only form of redemption contemplated by the statute, a lien on any part of those rights is prior to a later lien on all of those rights.

Section 38-39-103(1), C.R.S. 1973, allows a creditor holding a lien "on the sold premises or *some part thereof*" (emphasis added) to redeem from the foreclosure sale. The majority concedes that a creditor with a lien on an undivided interest in a parcel may redeem the entire parcel from a foreclosure sale as long as no other redemption rights exist based on liens encumbering other undivided interests. If such other redemption rights exist, however, the majority concludes that the entire scheme for redemption changes, each lienor being permitted to redeem only the interest to which

---

[1] The statute as amended now requires payment of interest at the default rate if specified in the original instrument. Section 38-39-102, C.R.S. 1973 (1979 Supp.).

his lien extends. Yet the statute, explicit in its recognition of redemption by those holding interests in "some part" of the sold premises, nowhere provides for the proportional redemption scheme envisioned by the majority.

For many years we have recognized that the holder of a judgment lien on an undivided interest in real property may redeem the entire property from a sale in foreclosure of a prior lien on the entire property. Moreover, he must redeem the entire property if he is to redeem at all; partial redemption is not permitted. *Walker v. Wallace, supra; see Chain O'Mines, Inc. v. Williamson,* 101 Colo. 231, 72 P.2d 265 (1937); *Leach v. Torbert,* 71 Colo. 85, 204 P. 334 (1922); *Bailey v. Erny,* 68 Colo. 211, 189 P. 18 (1920). In *Walker v. Wallace, supra,* we stated that, under the statute then in effect, "that property which has been sold in an execution sale in its entirety or en masse, if redeemed at all, must be redeemed en masse."[2] 79 Colo. 380, 384, 246 P. 553, 554 (1926). We went on to hold:
"As Walker was obligated to pay, if he redeemed, the entire amount for which the land had been sold, together with interest, and as there is no provision in our statute for a redemption at all except by payment of the entire sum, and not a moiety of that sum, for which the land was sold at the sale redeemed from, it follows necessarily that he may redeem, if at all, in whole only. To the same effect is *Martin v. Sprague,* 29 Minn. 53, 11 N.W. 143; *O'Brien v. Krenz,* 36 Minn. 136, 30 N.W. 458; *Sharpe v. Baker,* 51 Ind. App. 547, 571, 96 N.E. 627, 99 N.E. 44."
79 Colo. 380, 385, 246 P. 553, 554-5 (1926). *See* F. Stork and D. Sears, *Colorado Security Law* 218 (1955). Changes in the statutes since the cited cases were decided have not extended to authorization of partial redemption.

Although statutory content governs the results of statutory redemption cases, it is worthy of note that the general rule is "that a mortgage is an entire thing, and must be redeemed as such, and that the mortgagee cannot be compelled to divide his debt and his security." 9 G. Thompson, *Commentaries on the Modern Law of Real Property* 745 (1958); *see* 52 Mich. L. Rev. 312 (1953); 55 Am. Jur. 2d *Mortgages* § 886 (1971); 59 C.J.S. *Mortgages* § 834 (1949).

The majority correctly points out that to require First National Bank of Southglenn to pay the amount secured by Energy Fuels' lien on Ben Pickering's interest as a condition to redeeming from the sale of Kathleen Pickerings' interest utilizes Kathleen Pickering's property interest to reduce Ben Pickering's debt. However, the construction adopted by the majority leads to other problems not raised as issues in this case. It

---

[2] Walker was a judgment lienor of one of the two cotenants whose interests had been sold in proceedings to foreclose a mortgage on the cotenants' interests. The mortgage was prior to Walker's judgment lien.

subjects the original purchaser at the foreclosure sale to the prospect of becoming a co-owner with a lienor who redeems less than all of the property interests sold. This leaves the original purchaser with a property interest of uncertain value[3] and marketability. The prospect of such a result, against which a first lienor has no means of protection, cannot have a favorable effect on commercial transactions.

In no area of the law are certainty and predictability more important than in the law of real property. Numerous and important commercial transactions occur daily based upon the predictability of legal consequences of documents and relationships. The statute which we construe in this case does not contemplate partial redemption. In electing to prohibit partial redemption, the legislature had conflicting policies and interests to evaluate. Their choice is clearly expressed, and is confirmed by case law of long standing. *Walker v. Wallace, supra.* I would not warp the statute in an effort to avoid a result which may not be fully equitable to all parties in this case.

I would affirm the judgment of the court of appeals.

---

[3] It requires no appraisal expertise to conclude that an undivided one-half interest in a piece of real property is not worth one-half the value of the entire real property.