No. 27393

Janice Pierce v. City and County of Denver, a municipality; William H. McNichols, Mayor of the City and County of Denver; Arthur Dill, Chief of Police, City and County of Denver; Dan Cronin, Manager of Safety, City and County of Denver; Jerry Kennedy, Captain of the Denver City Police Department, Vice Squad

(565 P.2d 1337)

Decided June 27, 1977.

Peter H. Ney, for plaintiff-appellee.

Max P. Zall, City Attorney, Lloyd K. Shinsato, Assistant, Charles E. Sellner, Assistant, for defendants-appellants.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

In *Menefee v. City and County of Denver*, 190 Colo. 163, 544 P.2d 382 (1976), we held that the obscenity ordinance of the City and County of Denver was unconstitutional on First Amendment grounds. Contemporaneously with the announcement of *Menefee*, we decided *People v. Tabron*, 190 Colo. 149, 544 P.2d 372 (1976) (*Tabron I*), which declared the Colorado obscenity statute to be unconstitutional. Section 18-7-102(1)(a), C.R.S. 1973. As a result of *Menefee* and *Tabron I*, there was temporarily neither a Denver ordinance nor a state statute regulating obscenity in Colorado. Shortly after the above cases were decided, the Denver City Council enacted a new obscenity ordinance which took effect on April 17, 1976. Two days later, the plaintiff, a book department manager at the University of Colorado at Denver bookstore, filed a complaint attacking the constitutionality of the ordinance.[1] The trial court found the ordinance constitutionally defective and granted the plaintiff declaratory and injunctive relief. We affirm.

The trial court based its conclusion that the new ordinance was invalid on four alternative grounds: (1) at the time the ordinance was enacted, the City and County of Denver lacked authority to enact the ordinance, and the ordinance remains in conflict with subsequent legislative authorization, (2) the ordinance violates due process restraints upon criminal proscriptions because it incorporates a "negligence" standard of culpability, (3) the ordinance imposes penalties which are beyond the authority of the City and County of Denver, and (4) the obscenity ordinance was in violation of *U.S. Const.* Amend. I and *Colo. Const.* Article II, Section

---

[1] The attorney general was given notice in this case when section 31-12-101(52), C.R.S. 1973, entered into the trial court's consideration in determining whether the Denver obscenity ordinance was constitutional. The attorney general elected not to intervene.

10. We address only the first issue.[2]

Under our state constitution, "home rule" cities are afforded significant powers to control local matters.[3] *See Colo. Const.* Article XX, Section 6. In the area of "local and municipal matters," home rule municipal authority may "supercede within the territorial limits and other jurisdiction of said [home rule] city or town any law of the state in conflict therewith." *Colo. Const.* Article XX, Section 6. *See Vela v. People,* 174 Colo. 465, 484 P.2d 1204 (1971) (home rule city "may exercise exclusive jurisdiction by passing ordinances which supercede state statutes"); *Davis v. City and County of Denver,* 140 Colo. 30, 342 P.2d 674 (1959). On the other hand, there exists areas of "mixed" state and local concern in which concurrent state and municipal power to regulate is recognized. *See City of Aurora v. Martin,* 181 Colo. 72, 507 P.2d 868 (1973). Finally, there are areas of exclusively "statewide" concern where local power to regulate is preempted. *See Vick v. People,* 166 Colo. 565, 445 P.2d 220, *cert. denied,* 394 U.S. 945, 89 S.Ct. 1273, 22 L.Ed.2d 477 (1968); *Century Electric Service & Repair, Inc. v. Stone,* 193 Colo. 181, 564 P.2d 953 (1977). This preemption is often triggered by a "conflict" between the state and local schemes of regulation. *See Vick v. People, supra; Sierota v. Scott,* 143 Colo. 248, 352 P.2d 671 (1960); *Ray v. City and County of Denver,* 109 Colo. 74, 121 P.2d 886 (1942).

With respect to the "community standard" required for determining whether given material is obscene, *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), we have previously held that *state-wide* standards are required for application of a state obscenity statute. *See People v. Tabron,* 190 Colo. 161, 544 P.2d 380 (1976) (*Tabron II*). In *Tabron II,* we also expressly reserved ruling on "whether a local ordinance may impose a more restrictive standard than that prescribed in the interpretation of a state statute," but noted that a "state statute should not be construed in a different manner in Denver, Littleton, Grand Junction, Colorado Springs, and Aspen." *Tabron II, supra.* The rationale behind this determination was that, in matters as fundamental as the exercise of free speech, to permit a balkanization of the state into a

---

[2]Although the substantive provisions of the ordinance before us present significant questions as to compliance with the specificity required by the constitutional guarantees of free speech and due process, we need not consider these issues in this case. *See generally Tabron I, supra; People v. Tabron,* 190 Colo. 161, 544 P.2d 380 (1976) (*Tabron II*); *Menefee v. City and County of Denver, supra; People v. Hildebrandt,* 190 Colo. 167, 544 P.2d 384 (1976). The constitutional interests in free speech and due process are fully protected by resolution of the validity of this ordinance upon alternative grounds.

[3]Non-home-rule cities are governed by the stricter constraints of state supremacy, including matters of local concern. *See Central City v. Axton,* 159 Colo. 69, 410 P.2d 173 (1966); *Vanatta v. Town of Steamboat Springs,* 146 Colo. 356, 361 P.2d 441 (1960). The City of Denver is, of course, a home rule city. *See Lehman v. Denver,* 144 Colo. 109, 355 P.2d 309 (1960).

patchwork of jurisdictions imposing different standards as to what constitutes obscenity would impose an intolerable burden upon the intrastate exercise of free expression.[4] The effect is the same whether the fragmentation occurs by reason of variable construction of a state statute or variable standards imposed by municipal ordinances.

The General Assembly has also recognized the statewide importance of a uniform definition of obscenity:

"The general assembly hereby finds and declares that the definition and regulation of obscenity as to minors, the definition and regulation of live sexual performances and sadomasochistic material and sadomasochistic performances as to minors and adults, and the definition and regulation of obscenity with regard to the printed or written word and to the public display of obscene materials (pursuant to part 4 of this article) are matters of statewide concern; that, in defining and regulating these areas, only statewide standards in a state statute are workable; and that these standards should not be construed in a different manner in the various municipalities and counties of this state. To this end, it is the intent of this part 1 and part 4 of this article to impose statewide standards for the definition and regulation of obscenity as to minors, live sexual performances and sadomasochistic material and sadomasochistic performances as to minors and adults, the printed or written word, and the public display of obscene materials, which standards shall be applicable and uniform throughout the state and all its political subdivisions. It is not the intent of the general assembly in the adoption of this part 1 to preempt the power of municipalities to adopt ordinances concerning the definition and regulation of obscenity as to adults; except that such ordinances as to adults shall not be inconsistent with those prohibitions or definitions selected by a municipality as set forth in this part 1 as to minors."

1976 Cum.Supp., section 18-7-101(1), C.R.S. 1973; *see also* 1976 Cum.Supp., section 18-7-101(2), C.R.S. 1973 (alternative regulatory measures for municipalities must be consistent with state law).

■ Accordingly, we find that the question of the regulation of ob-

---

[4]The profound importance of this principle is underscored by the fact that the more common problem with which our obscenity decisions have dealt — the specificity required by a law restricting the exercise of expression — would be compounded in the case of a multitude of different municipal obscenity ordinances. Moreover, the broad range of activities proscribed by the ordinance in question includes not only printed and photographic material, but "vocal activity," "any live physical presence," and "knowledge . . . or emotion which that [allegedly obscene] material communicates." *Denver Revised Municipal Code* 823.2-5(1).

scenity is properly a matter of statewide concern under *Colo. Const.* Article XX, Section 6.[5] *See generally* Comment, *Colorado Municipal Government Authority to Regulate Obscene Materials,* 51 D.U.L.J. 75 (1974).

This determination does not end the matter, however. In deciding the role of home rule cities in the regulation of obscenity in this state, we, of course, defer to the determination of our legislature that the matter of obscenity regulation is, in some respects, properly a matter for consistent state and local control. 1976 Cum.Supp., section 18-7-101, C.R.S. 1973. *See Woolverton v. City and County of Denver,* 146 Colo. 247, 361 P.2d 982 (1961); *Sierota v. Scott, supra.* A further question, therefore, is posed by the determination by the trial court that the Denver ordinance exceeded and was inconsistent with the grant of power by the legislature.[6]

■ Our review of the ordinance in question indicates that it clearly conflicts with the legislative grant of power in *at least* these respects: (a) the ordinance attempts to control the "printed or written words," (b) the ordinance attempts to regulate obscenity as to minors, (c) the ordinance defines obscenity without regard to statewide community standards, (d) the ordinance contains a definition of obscenity which is significantly broader than that contained in the state statute, and (e) the ordinance incorporates a definition of the required *mens rea* element which is materially broader than that contained in the state statute.[7] *Compare Denver Revised*

---

[5]In *Tabron II, supra,* we determined that a "statewide community standard" was not in conflict with the requirements of *Miller v. California, supra. See also Jenkins v. Georgia,* 418 U.S. 153, 94 S.Ct. 2750, 41 L.Ed.2d 642 (1974). Accordingly, we find that our construction of state law in this case is consistent with the community-based standards required by the First Amendment. The matter of whether under our own state constitution, the General Assembly or a municipality is entitled to supremacy in the regulation of a given matter is not to be determined by the substantive requirements of the First Amendment. As the Supreme Court of the United States noted in *Smith v. United States,* 45 U.S.L.W. 4495 (U.S. May 23, 1977): "State legislation must still define the kinds of conduct that will be regulated by the State." The quagmire of uncertainty which surrounds the law of obscenity was not eliminated by the two latest decisions of the Supreme Court of the United States. *Ward v. Illinois,* 45 U.S.L.W. 4623 (U.S., June 9, 1977), deals with the specificity required for regulation but offers no guidance here. *See also Splawn v. California,* 45 U.S.L.W. 4574 (U.S., June 6, 1977). All of this term's opinions by the United States Supreme Court on the obscenity issue have been decided by a 5-4 vote, thereby magnifying the confusion attached to the law of obscenity.

[6]Because this is a claim for declaratory relief only, the status of the ordinance during the three-month period between the time of the enactment of the ordinance and the enactment of the present state statute authorizing a limited degree of consistent local regulation is a moot question which we need not address.

[7]*Compare* 1976 Cum.Supp., Section 18-1-501(6), C.R.S. 1973 ("knowingly," as used in state obscenity statutes, defined as being "aware that his conduct is of such nature or that such circumstances exist") *with Denver Revised Municipal Code* 823.2-8 (imposing culpability standard of "knowingly," defined as "[h]aving general knowledge or reason to know or a belief or ground for belief which warrants further inspection or inquiry"). We express no opinion as to the due process implications of a criminal obscenity statute which imposes a "negligence" standard of culpability. *Compare Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *Ginsberg v. New York,* 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968), *with People v. Johnson,* 193 Colo. 199, 564 P.2d 116.

*Municipal Code 823 with* 1976 Cum. Supp., section 18-7-101, *et seq.,* C.R.S. 1973.[8]

While the ordinance in question contains a "severability" clause, *Denver Revised Municipal Code* 823.4, the pervasive character of its deficiencies renders futile any attempt to salvage it as a meaningful legislative enactment.

Accordingly, we affirm the judgment of the trial court which held the entire ordinance to be invalid.

---

[8]The constitutional validity of the state obscenity statute is not before us in this case, and we do not reach that issue. Our application of the state statute in this case has been reserved solely for measuring the permissible limits of municipal regulation of obscenity. We note that an obscenity statute has recently been enacted by the General Assembly which has not at this time been signed by the Governor. Senate Bill No. 447 (1977). The newly enacted statute was not before the trial court and was not subject to interpretation in this opinion.