John W. SANT, Plaintiff–Appellee,

v.

Ella STEPHENS, Public Trustee for Garfield County, State of Colorado, Defendant,

and

Edmund W. Roginski and Elisabeth D. Getzen, Defendants–Appellants.

No. 84–1556.

United States Court of Appeals, Tenth Circuit.

June 13, 1988.

**1120**

Nicholas W. Goluba, Jr. of Goluba & Goluba, Glenwood Springs, Colo., for defendants-appellants.

David D. Schlachter of Tilly & Graves, P.C., Denver, Colo., for plaintiff-appellee.

Before SEYMOUR and SETH, Circuit Judges, and BROWN, District Judge *.

SETH, Circuit Judge.

This is an appeal in a diversity foreclosure and redemption case raising unusual questions of state law. The state law questions were certified to the Colorado Supreme Court and we were provided with the answers which resolve the issues raised in this appeal, 753 P.2d 752. A brief outline of the facts is necessary, but the details and the applicable state law are contained in the opinion of the Colorado Supreme Court which is attached.

James and Elizabeth Patterson were the owners of certain real property in the City of Glenwood Springs, Colorado. They delivered a deed of trust in the entire property to the Horace Mann Life Insurance Company. This interest was recorded on December 15, 1976. Subsequently, James Patterson gave a deed of trust to his undivided one-half interest in the property to the Valley Bank and Trust. Finally, on February 2, 1983, the City of Glenwood Springs recorded a "Notice of Lien" with

the clerk and recorder of Garfield County asserting a lien against the Pattersons' property for unpaid utility services pursuant to § 22–2 of the Glenwood Springs Municipal Code. The City of Glenwood Springs' lien was subsequently assigned to appellants Edmund Roginski and Elizabeth Getzen.

On May 4, 1983, the undivided one-half interest securing the deed of trust to Valley Bank and Trust was sold at foreclosure by the public trustee to the plaintiff-appellee, John W. Sant, for $19,260.00 and Mr. Sant was issued a certificate of purchase. No junior lienors filed notices of intent to redeem or exercised their rights of redemption by July 18 as required by C.R.S. § 38–39–103. Therefore, pursuant to C.R.S. § 38–39–110, Mr. Sant was issued a public trustee deed dated and recorded on July 27, 1983 for an undivided one-half interest in the property.

When the public trustee gave the notice of election and demand for foreclosure sale under the deed of trust held by the Horace Mann Life Insurance Company, Mr. Sant again purchased the interest, this time in the entire property, for $26,369.00 and on May 6, 1983 was issued a certificate of purchase.

Appellees Roginski and Getzen filed a notice of redemption with the public trustee for the entire interest in the Horace Mann foreclosure as possessors of a junior lien (Glenwood Springs lien) and the next day tendered $26,917.13 to the public trustee and were issued a certificate of redemption and a public trustee deed (July 19) for the property which was recorded July 21, 1983.

Mr. Sant made demands upon the public trustee to issue a public trustee deed based on his May 6, 1983 certificate of purchase received at the Horace Mann sale and a July 1983 deed from the Valley Bank sale. This request was refused. Mr. Sant then brought this diversity action in the United States District Court for the District of Colorado to vacate the defendants' certifi-

* Honorable Wesley E. Brown, United States District Judge for the District of Kansas, sitting by designation.

cate of redemption and public trustee deed. The issues raised before the district court were whether the lien purported to be created by § 22–2 of the Glenwood Springs Municipal Code is entitled to redemptive rights under C.R.S. § 38–39–103 and whether such a lien's redemptive rights are extinguished as to the whole property by the failure to exercise them at a public trustee sale of an undivided one-half interest.

Without expressly ruling on the general availability of redemptive rights for such liens, the district court ordered the clerk and recorder of Garfield County to vacate and set aside the defendants' public trustee deed and issue a deed in favor of the plaintiff Sant. The defendants thereupon took this appeal.

As mentioned at the outset, this appeal raised several unusual questions of Colorado law which appeared not to have been decided by the Colorado courts and this court certified two questions to the Supreme Court of Colorado the answers to which would be dispositive of the basic issues. The Colorado court has provided answers to the certified questions in a finely crafted and thorough en banc opinion on which we have based our disposition of the appeal and which we have attached to this opinion. It was handed down on April 11, 1988 as No. 85SA463, 753 P.2d 752.

 The two questions certified to the Supreme Court of Colorado were:

"1. Does a lien created by the City of Glenwood Springs Municipal Code § 22–2 for unpaid utility services have rights of redemption under C.R.S. § 38–39–103?

"2. Does the failure of a junior lienholder to exercise redemptive rights under C.R.S. § 38–39–103 at a public sale foreclosing on an undivided one-half interest in the property extinguish that lienholder's redemptive rights in subsequent foreclosure sales of the entire property?"

The court answered "yes" to the first question and "no" to the second.

Thus the position taken by the appellants was correct. Their lien on the one-half interest of Elizabeth S. Patterson, as the Colorado Supreme Court held, "was not extinguished by their failure to redeem from the first sale"; also, the Roginskis, based on their lien, had the right to redeem the entire property covered by the Horace Mann sale and did so.

The judgment of the trial court is REVERSED and the case REMANDED with directions to enter judgment for the defendant and the appellants.

### APPENDIX

Supreme Court of Colorado

No. 85SA463

April 11, 1988

John W. Sant, Plaintiff–Appellee,

v.

Ella Stephens, Public Trustee for Garfield County, State of Colorado, Defendant,

and

Edmund W. Roginski and Elisabeth D. Getzen, Defendants–Appellants.

Certification of Questions from the United States Court of Appeals for the Tenth Circuit Pursuant to C.A.R. 21.1.

LOHR, Justice.

In accordance with C.A.R. 21.1, the United States Court of Appeals for the Tenth Circuit has certified to the Supreme Court of Colorado two questions of law pertaining to a pending federal case:

(1) Does a lien created by the City of Glenwood Springs Municipal Code § 22–2 for unpaid utility services have rights of redemption under C.R.S. § 38–39–103?

(2) Does the failure of a junior lienholder to exercise redemptive rights under C.R.S. § 38–39–103 at a public sale foreclosing on an undivided one-half interest in the property extinguish that lienholder's redemptive rights in subsequent foreclosure sales of the entire property?

This court has agreed to answer both interrogatories, and now answers "yes" to the first question and "no" to the second.

## I.

Resolution of these questions requires careful consideration of the factual context in which they arose. J. James Patterson and Elizabeth S. Patterson were the owners of certain real property in Glenwood Springs, Colorado. This case involves three liens that attached to the property during the time it was owned by the Pattersons. The senior lien was a first deed of trust given by the Pattersons to the public trustee for the use of Horace Mann Life Insurance Company (Horace Mann). This instrument was recorded [1] on December 15, 1976. On March 4, 1982, J. James Patterson gave a second deed of trust on his undivided one-half interest in the property to the public trustee for the use of Valley Bank & Trust, which was recorded on March 17, 1982. The third relevant lien was created when the City of Glenwood Springs recorded a notice of lien against the entire property on February 2, 1983. This lien was for unpaid utility assessments in the amount of $176.07, and it arose pursuant to section 22–2 of the Glenwood Springs Municipal Code.

The Pattersons were unable to meet the obligations secured by the deeds of trust, and the holders of the first and second deeds of trust commenced separate foreclosure proceedings. On May 4, 1983, a public trustee's sale was conducted based upon the deed of trust held by Valley Bank & Trust on J. James Patterson's undivided one-half interest. The plaintiff, John W. Sant, bid $19,260.00 and was issued a certificate of purchase for the undivided one-half interest by the public trustee. A second public trustee's sale was held two days later on May 6, 1983, based upon the Horace Mann deed of trust on all interests in the property. Sant bid $26,369.00 and was issued a second certificate of purchase, covering the entire property.

On May 26, 1983, the City of Glenwood Springs assigned its lien to Edmund W. Roginski and Elisabeth D. Roginski.[2] This assignment was recorded on July 20, 1983. On that same date, the last day of the period allowed by statute for the owners of the property to redeem from the Horace Mann foreclosure sale, the Roginskis filed a notice of intent to redeem the property from that foreclosure sale. The owners did not redeem, and no other lienor filed a notice of intent to redeem. On July 21, the Roginskis tendered $26,917.13 to the public trustee in order to exercise their right of redemption from the Horace Mann foreclosure sale as holders of a junior lien. The public trustee accepted this payment and on July 21 issued to the Roginskis a certificate of redemption and a public trustee's deed for all interests in the property. The Roginskis then took possession of the property.

Neither the Roginskis nor any other junior lienors had filed a notice of intent to redeem or had exercised their rights of redemption in the Valley Bank & Trust foreclosure proceeding, and on July 27, 1983, the public trustee issued to Sant a public trustee's deed to J. James Patterson's undivided one-half interest.

Sant then requested that the public trustee issue a public trustee's deed to the entire property based on his May 6, 1983, certificate of purchase arising from the Horace Mann lien foreclosure. When the public trustee refused, Sant brought a diversity of citizenship action in the United States District Court, pursuant to 28 U.S.C. § 1332 (1982), naming as defendants the Roginskis and Ella Stephens, the public trustee of Garfield County. Sant challenged the Roginskis' redemption of the property and asked that Stephens be required to vacate the certificate of redemption and the public trustee's deed issued to

---

1. All the recordings referred to in this opinion were in the records of the County Clerk and Recorder of Garfield County.

2. The lien was originally assigned to Edmund W. Roginski and Elisabeth D. Getzen. Roginski and Getzen have married since this case began, and Elisabeth D. Getzen is now known as Elisabeth D. Roginski. These persons are the defendants-appellants and will be referred to as the Roginskis.

the Roginskis and issue a public trustee's deed in Sant's favor based on the Horace Mann lien foreclosure. He also sought payment of his attorney fees, compensation for the rental value of the property during the time that the Roginskis occupied it, and punitive damages for clouding the title. The Roginskis filed an answer raising several affirmative defenses and asserting several counterclaims, including a claim to quiet title to the property. The Roginskis and Sant then moved separately for partial summary judgment to resolve the issues concerning their respective ownership rights in the property.

The United States District Court held a hearing on the motions and issued its order on December 16, 1983. *Sant v. Stephens,* 580 F.Supp. 1003 (D.Colo.1983). The court determined that the utility lien was valid and held that the Roginskis' failure to redeem their interest from the Valley Bank & Trust foreclosure sale cut off their right to redeem from the Horace Mann sale. The district court ordered the public trustee to vacate the certificate of redemption and public trustee's deed issued to the Roginskis and to issue a public trustee's deed on all interests in the property in favor of Sant. The district court denied the Roginskis' motion to alter or amend the judgment, and they appealed.[3] The United States Court of Appeals for the Tenth Circuit determined that the decisions of the Colorado Supreme Court provided no controlling precedent on the issues presented by this case and certified two questions of Colorado law to this court.

## II.

In order to answer the questions presented by this case, it is essential to understand the statutory provisions relating to rights of redemption. Article 39 of Title 38 of the Colorado Revised Statutes sets out the procedures governing redemption of real property from a sale under foreclosure or execution. When such a sale of lands is held, the purchaser of the property receives a

certificate of purchase containing a statement that the purchaser will be entitled to a deed for the property at the expiration of all redemption periods if no redemption is made. § 38–39–115, 16A C.R.S. (1982). The owner of the property or "any person who might be liable upon a deficiency" has seventy-five days from the date of sale to redeem by paying the sum for which the property was sold plus interest from the date of sale and any taxes or other charges, § 38–39–102, 16A C.R.S. (1982), and such a redemption annuls the sale, § 38–39–105, 16A C.R.S. (1982).

If no redemption is made by the owner within this seventy-five day period, those holding encumbrances or liens on the property are given an opportunity to redeem. In order to exercise this right, the lienor or encumbrancer must have filed a notice of intent to redeem within the seventy-five day redemption period of section 38–39–102. § 38–39–103(1), (2), 16A C.R.S. (1982). Section 38–39–103(1) describes the redemption process for lienors:

[I]f no redemption is made within the redemption period provided for in section 38–39–102, the encumbrancer or lienor having the senior lien, according to the records of the county clerk and recorder's office of the county where the real estate is situate, on the sold premises or some part thereof subsequent to the lien upon which such sale was held may redeem within ten days after the expiration of the above redemption period by paying the amount required by section 38–39–102, and each subsequent encumbrancer and lienor in succession shall have and be allowed a five-day period to redeem, according to the priority of his lien, and may redeem within the five-day period allotted to him by paying all redemption amounts theretofore paid with interest and the amount of all such liens with interest prior to his own held by such persons as are evidenced in the manner required in this section or, if no encumbrancer or lienor prior to himself

---

**3.** The district court certified the partial summary judgment as final pursuant to Fed.R.Civ.P. 54(b).

has redeemed, by paying the amount required in section 38–39–102.

A redeeming lienor is issued a certificate of redemption which, when duly recorded, "operates as an assignment to him of the estate and interest acquired by the purchaser at the sale, subject, however, to the rights of persons who may be entitled subsequently to redeem." § 38–39–105. After all redemption periods have expired, a deed "to the land and tenements sold" is issued to the holder of the certificate of purchase or to the lienor who last redeemed. § 38–39–110, 16A C.R.S. (1982). Section 38–39–110 provides in pertinent part:

> Upon the issuance and delivery of such deed, but not until then, title shall vest in the grantee and such title shall be free and clear of all liens and encumbrances recorded or filed subsequent to the recording or filing of the lien on which the sale referred to in this section was based.

In construing these statutory provisions, it is important to remember that the right to redeem from an execution or foreclosure sale is "to be exercised in strict compliance with statutory terms" and "depends entirely upon the provisions of the statute creating the right." *Johnson v. Smith*, 675 P.2d 307, 310 (Colo.1984). As this court observed more than half a century ago, "[t]he right to redeem is purely statutory and is not to be enlarged by judicial interpretation, yet a liberal construction is to be given the statute allowing redemption, to the end that all the property of a debtor may pay as many debts as possible." *Walker v. Wallace*, 79 Colo. 380, 382, 246 P. 553, 553 (1926). *See also First National Bank of Southglenn v. Energy Fuels Corp.*, 200 Colo. 540, 546, 618 P.2d 1115, 1119 (1980).

We turn now to the two interrogatories posed to us by the United States Court of Appeals for the Tenth Circuit.

### III.

First Interrogatory:

Does a lien created by the City of Glenwood Springs Municipal Code § 22–2 for unpaid utility services have rights of redemption under C.R.S. § 38–39–103?

We agree with the district court that Glenwood Springs has the power to enact an ordinance creating liens with rights of redemption. *Sant v. Stephens*, 580 F.Supp. at 1005. Glenwood Springs is a home rule city. *See* Colo. Const. art. XX; Charter of the City of Glenwood Springs. Article XX, Section 6, of the Colorado Constitution grants home rule cities "every power possessed by the General Assembly as to local and municipal matters," unless these powers are restricted by the city's charter. *Service Oil Co. v. Rhodus*, 179 Colo. 335, 344, 500 P.2d 807, 811 (1972). *Accord Board of County Comm'rs v. City of Thornton*, 629 P.2d 605, 609 (Colo.1981). In matters of purely local and municipal concern, an ordinance adopted by a home rule city supersedes a conflicting state statute. *City of Greenwood Village v. Fleming*, 643 P.2d 511, 515 (Colo.1982); *Pierce v. City and County of Denver*, 193 Colo. 347, 349, 565 P.2d 1337, 1338 (1977). In matters of both statewide and local concern, state statutes and municipal ordinances may coexist if they do not conflict. *DeLong v. City and County of Denver*, 195 Colo. 27, 31–32, 576 P.2d 537, 539–40 (1978). *Accord Denver and Rio Grande Western Railroad Co. v. City and County of Denver*, 673 P.2d 354, 358 (Colo.1983).

The parties in this case disagree as to the nature of the Glenwood Springs ordinance. However, so long as the ordinance involves matters of local concern, even if they may also be of statewide concern, and does not conflict with a state statute, it is not superseded by state enactments. There can be no doubt that the collection of charges for utility services provided by a municipality is a matter of local concern. Therefore, even if it also involves some matters of statewide concern, the ordinance is valid absent a conflict with a state statute. In determining whether two pieces of legislation conflict, the critical inquiry is "whether the ordinance authorizes what the state forbids, or forbids what the state has expressly authorized." *Aurora v. Martin*, 181 Colo. 72, 75, 507 P.2d 868, 869–70 (1973). We have discovered no state stat-

ute that prohibits a home rule city from creating liens to secure utility charges or from providing that such liens shall have redemption rights like those accorded to many other classes of liens. We agree with the district court that the Glenwood Springs ordinance does not conflict with any state statute.

The district court did not expressly rule that a lien created pursuant to section 22–2 includes the redemption rights specified in section 38–39–103, 16A C.R.S. (1982). Sant argues that not all liens have rights of redemption under section 38–39–103, and contends that the lien created by section 22–2 does not incorporate such redemption rights. Since the Roginskis purported to redeem the property in accordance with section 38–39–103, Sant asserts, their redemption of the property was invalid.

The City of Glenwood Springs provides utility services to its residents, and Municipal Code section 22–2 allows the city to assess a lien for utilities services on the property served "[i]f charges for electricity, water, sewer, garbage, trash and waste material pick-up service, or any combination of these, remain unpaid for thirty (30) days after payment is due...." The ordinance sets out the notice and review procedures the city must follow before such a lien can be assessed. Sant does not suggest that the city failed to follow these procedures in this case.

Section 22–2(b) provides in pertinent part:

The lien shall then be certified to the county treasurer with instructions to collect the lien in the same manner as general taxes are collected and assessed against the subject property. To collect the lien, the city may avail itself of the laws and of liens [sic], including laws for the sale and redemption of property for

nonpayment. Without limiting the foregoing, the city may bring an action in a court of law to collect all unpaid arrearages for utilities service.

Sant argues that this ordinance authorizes the city to collect utility arrearages in the same manner as general taxes are collected and assessed and characterizes the liens imposed thereunder as liens for the assessment of taxes. Section 38–39–114, 16A C.R.S. (1982), provides that Article 39, which includes section 38–39–103, relating to lienors' rights to redeem from foreclosure sales, "shall not apply to statutory liens of taxes." Sant contends that this provision expressly excludes liens such as those imposed under section 22–2 from the coverage of section 38–39–103.[4] However, we reject Sant's analysis. Section 22–2 authorizes the creation of a lien for unpaid utility charges for services supplied by the City of Glenwood Springs. This utility lien is not a "statutory lien of taxes," such as liens for property taxes, created pursuant to section 39–1–107, 16B C.R.S. (1982 & 1987 Supp.), which have priority over all other liens until the taxes have been paid in full. See also §§ 39–22–604(7), 16B C.R.S. (1982) (withholding taxes); 39–26–117, 16B C.R.S. (1982) (sales taxes); 39–26–205, 16B C.R.S. (1982) (use taxes). Property tax liens are governed by specific provisions relating to the sale of property for unpaid taxes and redemption from tax sales. See §§ 39–11–101 to –151; 39–12–101 to –113, 16B C.R.S. (1982). Since the ordinance creates a lien for utility charges rather than for taxes, section 38–39–114 does not foreclose the application of section 38–39–103.

Sant also points out that section 38–39–103 does not expressly provide that a lien such as that created pursuant to section 22–2 possesses redemption rights. However, the provision does not define the types of liens covered. Instead, the statute

---

**4.** Sant asserts that sections 31–25–1101 to –1119, 12B C.R.S. (1986), which describe the process for collection of delinquent assessments by foreclosure proceedings, specify the more limited redemption rights available in conjunction with liens for the assessment of taxes such as the utility charges at issue here. However, sections 31–25–1101 to –1119 apply only to the collection of special assessments levied to pay the costs of

local improvements. See § 31–25–1103, 12B C.R.S. (1986). In addition, section 31–25–1118, 12B C.R.S. (1986), specifically states that the process described in these provisions is not "obligatory upon any taxing authority. Such taxing authority, at its election, may pursue any other remedy provided by law for the collection of delinquent assessments."

refers broadly to "encumbrancer[s] or lienor[s]," providing them with the right to redeem from a foreclosure or execution sale. The right to redeem has not been limited to holders of mortgages or deeds of trust. In *Twogood v. Ocsay*, 97 Colo. 300, 49 P.2d 437 (1935), this court determined that the right to redeem from a foreclosure or execution sale extends to judgment lienors. *See also First National Bank of Southglenn v. Energy Fuels Corp.*, 200 Colo. at 543–44, 618 P.2d at 1117. Similarly, in *Dolan v. Flett*, 41 Colo.App. 40, 582 P.2d 694 (1978), the Colorado Court of Appeals rejected an attempt to limit the concept of "lienor" embodied in section 38–39–103 and determined that the holder of an attorney's lien that has not been reduced to judgment is entitled to redeem in accordance with section 38–39–103.

Moreover, the language in section 22–2(b), although somewhat ambiguous, demonstrates an intent to incorporate redemption rights into liens created thereunder. The provision regarding the collection of liens "in the same manner as general taxes are collected" simply describes one method for collecting the utility charges.[5] The ordinance also specifies two other procedures for collection of the secured charges. The city may collect the unpaid utility charges by availing itself of the general laws relating to liens, including laws for the sale and redemption of property subject to the lien. Alternatively, the city may institute civil proceedings to collect unpaid arrearages. The ordinance adequately states that the utility liens created thereunder carry redemptive rights, and the language of the ordinance should be given effect.[6] Therefore, the answer to the first question of law posed by the Tenth Circuit Court of Appeals is "yes."

5. By authorizing the collection of the lien in the same manner as general taxes are collected, it is not clear whether the city was attempting to create a tax lien with priority over all other encumbrances. Since the city did not rely on this method of collection in this case, we express no opinion as to whether the ordinance has created a priority lien, or whether the city could do so.

## IV.

Second Interrogatory:

Does the failure of a junior lienholder to exercise redemptive rights under C.R.S. § 38–39–103 at a public sale foreclosing on an undivided one-half interest in the property extinguish that lienholder's redemptive rights in subsequent foreclosure sales of the entire property?

The district court determined that the issuance of the public trustee's deed to Sant in the Valley Bank & Trust foreclosure cut off the rights of all lienors who could have redeemed from the sale, even though that sale involved only an undivided one-half interest in the property. Since the Roginskis failed to redeem from the Valley Bank & Trust foreclosure sale, the court held, their rights in the entire property were extinguished, and a public trustee's deed to the entire property should have been issued to Sant based upon the certificate of purchase he obtained at the Horace Mann foreclosure sale.

The decision relied on the language of section 38–39–110, which provides that issuance of a public trustee's deed to the holder of a certificate of purchase cuts off all liens recorded or filed subsequent to the recording or filing of the lien on which the sale was based. As the district court interpreted this language, the issuance of a public trustee's deed extinguished the entire rights of all lienors who had been entitled to redeem but did not exercise their rights to do so. The court expressed the view that requiring all junior lienors to participate in the redemption process in order to preserve their interests is consistent with the policies underlying the redemption statute:

6. The assignment of the lien from Glenwood Springs to the Roginskis specifically stated:
This assignment carries with it, the full right to collect and enforce said lien and all redemption rights and other rights of the assignor under Title 38, Article 39, C.R.S.1973, as amended, including without limitation, the right to redeem the property to which the lien has attached, from any Public Trustee's Sale or other foreclosure sale.

This rule encourages participation in the redemption process, thereby maximizing the price obtained upon sale. Moreover, this rule leaves no confusion about the rights of subsequent lienors following the issuance of the trustee's deed and therefore protects the value of the property interest obtained upon purchase or redemption.

*Sant v. Stephens,* 580 F.Supp. at 1007. The court also stated that it declined to sanction a procedure which could allow the Roginskis to make a conscious decision not to redeem from the first sale, since they knew that the sale on the superior lien was pending, and still retain the right to redeem from the second sale. The decision stated that such "speculation" was contrary to the intent of the redemption statutes. 580 F.Supp. at 1007 n. 5.

Sant contends that the approach adopted by the district court is correct. He asserts that the language of section 38–39–103(1), which states that a junior lienor with a lien on "the sold premises or some part thereof ... may redeem," provides all junior lienors holding any interests in the property with redemptive rights that must be exercised to preserve such interests. According to Sant, the Roginskis had an obligation to exercise their redemption rights at the first sale and since they did not, their interest in the entire property was cut off. Sant emphasizes that the Roginskis held only one lien covering the entire property and contends that the Roginskis are trying to divide this single lien into individual liens on the Pattersons' undivided one-half interests with separate rights of redemption. He argues that this is impermissible, since a lien is a single, non-divisible interest. *See, e.g., Warren v. Ellison,* 250 Ala. 484, 35 So.2d 166, 168 (1948) ("the mortgage debt is a single entity"); *Springer Corp. v. Kirkeby–Natus,* 80 N.M. 205, 453 P.2d 376, 379 (1969) ("a mortgage is an entire thing, and must be redeemed in its entirety"); 9 G. Thompson, *Commentaries on the Modern Law of Real Property* § 4829 (1958). However, these cases establish only that a lienor holding a lien on an undivided interest must still redeem all interests in the property when the entire property is the subject of the foreclosure sale, and do not support Sant's position.

We reject the rule developed by the district court for several reasons. First, we note that the district court misconstrued section 38–39–110. Section 38–39–110 provides for the delivery of a deed "to the land and tenements sold," which conveys title free of all liens subsequent to the one on which the sale is based. Thus, a foreclosure sale discharges liens only with respect to the interests sold. Since the Valley Bank & Trust sale involved only J. James Patterson's undivided one-half interest, the deed issued could not affect liens on Elizabeth S. Patterson's undivided one-half interest.

In addition, the approach adopted by the district court and urged by Sant is contrary to general principles of cotenancy. Although the record does not indicate whether the Pattersons held title as joint tenants or tenants in common, the distinction is not important here. Under fundamental concepts of property law, "[e]ach tenant in common holds his interest and his title independently of the other cotenants...." 4 G. Thompson, *Commentaries on the Modern Law of Real Property* § 1793 (1979). Similarly, "[o]ne joint tenant cannot alienate the interest of the other joint tenants or in any way affect such interests." *Id.* at § 1780. Thus, it is clear that the interests of J. James Patterson and Elizabeth S. Patterson are distinct, and action taken as to J. James Patterson's interest does not affect that of Elizabeth S. Patterson. In *First National Bank of Southglenn v. Energy Fuels Corp.,* this court pointed out that a creditor with a lien against one joint tenant has no right to attach the interest of the other joint tenant, and that "[t]he real property interest of two joint tenants cannot be used to satisfy the judgment creditor of one joint tenant." 200 Colo. at 545, 618 P.2d at 1119. The district court's holding in this case requires a lienholder on all interests in the property to redeem from a sale of an undivided interest, and this essentially uses the interest of two cotenants to satisfy the creditor of one.

The rule developed by the district court is also contrary to the rationale of the decision of this court in *First National Bank of Southglenn v. Energy Fuels Corp.*, a case in which we considered the meaning of section 38–39–103 and the purposes underlying Colorado's redemption statutes.[7] *Energy Fuels* involved real property owned in joint tenancy by a husband and wife. Energy Fuels Corporation held a judgment lien against the husband, while First National Bank of Southglenn was the beneficiary of a deed of trust junior to the Energy Fuels lien but encumbering the interests of both cotenants. Both lienors sought to redeem the property from a foreclosure sale of a senior deed of trust. We noted that Energy Fuels' lien attached only to the husband's undivided interest in the property, while Southglenn Bank's lien attached to both the husband's and the wife's interests, and concluded:

> Therefore, we hold that no liens existed on [the wife's] interest prior to Southglenn Bank, and Southglenn Bank may redeem her interest in the property without paying the amount of [the husband's] debt to Energy Fuels.

200 Colo. at 544, 618 P.2d at 1118. This holding establishes that a lien attaching to the interests of both cotenants carries distinct redemptive rights as to each interest. Therefore, the Roginskis' failure to redeem from the first foreclosure sale, which covered only the interest of J. James Patter-

son, did not extinguish their lien on Elizabeth S. Patterson's undivided one-half interest.

Since their lien on the interest of Elizabeth S. Patterson was not extinguished by their failure to redeem from the first sale, the Roginskis assert that they were entitled to redeem the entire property.[8] In *Walker v. Wallace*, 79 Colo. 380, 246 P. 553 (1926), this court held that the holder of a lien on an undivided interest in real property was entitled to redeem the entire property from a sale in foreclosure of a prior lien on the whole. *See also Leach v. Torbert*, 71 Colo. 85, 204 P. 334 (1922). In fact, a holder of a lien on an undivided interest who wished to redeem was obligated to redeem the entire property. *Walker v. Wallace*, 79 Colo. at 385, 246 P. at 554–55. Our decision noted that the redemption statute then in effect did not allow for partial redemption by such a lienholder. We reasoned that to allow a holder of a lien on an undivided interest to redeem the entire property would further the policies underlying redemption statutes by using the property "to pay as many debts of the judgment debtors and each of them as is possible. . . ." 79 Colo. at 385, 246 P. at 555. *See also Chain O'Mines, Inc. v. Williamson*, 101 Colo. 231, 72 P.2d 265 (1937).

The rule announced in *Walker v. Wallace* was modified by this court in *First National Bank of Southglenn v. Energy Fuels Corp.* In *Energy Fuels* we acknowl-

---

**7.** In *Energy Fuels*, a husband and wife owned residential real property as joint tenants. Energy Fuels held a judgment lien against the husband, and the husband and wife jointly executed a second deed of trust to Chatfield Bank and a third deed of trust to First National Bank of Southglenn. The holder of the first deed of trust on the property foreclosed, and Energy Fuels, Chatfield Bank, and Southglenn Bank all filed timely notices of their intent to redeem. The public trustee determined that Energy Fuels had the first right to redeem all interests in the property. Chatfield Bank filed suit to restrain Energy Fuels from redeeming the wife's interest in the property ahead of Chatfield Bank and Southglenn Bank.

The district court held that Energy Fuels could only redeem the husband's undivided interest and that Chatfield Bank, followed by Southglenn Bank, had the first right to redeem the wife's interest. The court of appeals reversed,

holding that Energy Fuels had priority to redeem the entire property since its lien was recorded first. Southglenn Bank then sought review by this court.

**8.** When the Roginskis redeemed from the Horace Mann foreclosure sale, the public trustee's deed had not yet been issued in the Valley Bank & Trust foreclosure proceeding. Therefore, the Roginski's lien on the undivided interest of J. James Patterson had not yet been extinguished. *See* § 38–39–110, 16A C.R.S. (1982). The continuing validity of the Roginski's lien on J. James Patterson's undivided interest at the time they redeemed from the Horace Mann foreclosure, however, is not essential to our determination that the Roginskis' redemption rights in the Horace Mann foreclosure were not extinguished by their decision not to exercise their redemption rights in the Valley Bank & Trust foreclosure.

edged the holding of *Walker v. Wallace* that a lienholder on an undivided interest in property has the right to redeem the entire property but found important differences between the case then before us and *Walker v. Wallace:*

> The applicable redemption statute in 1926 was markedly different from section 38–39–103(1), C.R.S. 1973. Also, *Walker* concerned only one creditor seeking to redeem. This case involves competing lienholders who each possess a superior lien on separate interests of real property held in joint tenancy.

200 Colo. at 546, 618 P.2d at 1119 (footnote omitted). We noted that the rule in *Walker v. Wallace* would still apply to situations similar to that case, stating that "[i]f Energy Fuels had been the only lienor seeking to redeem or the only person with the right to redeem, it could redeem the whole property." 200 Colo. at 544, 618 P.2d at 1117.

As in *Energy Fuels*, the present case involves "competing lienholders who each possess a superior lien on separate interests of real property" held by cotenants. 200 Colo. at 546, 618 P.2d at 1119. Sant was the purchaser at the foreclosure sale based on the Valley Bank & Trust deed of trust, and thereby obtained the superior lien on J. James Patterson's interest, while the Roginskis held the superior lien on Elizabeth S. Patterson's interest. The lesson of *Energy Fuels* is that the Roginskis' lien must be considered to be divisible for redemption purposes in such circumstances. The decision of the Roginskis not to redeem from the sale of J. James Patterson's undivided one-half interest did not render their lien on Elizabeth S. Patterson's undivided one-half interest subject to extinguishment when the public trustee's deed issued on the Valley Bank & Trust foreclosure sale. Based upon their lien, the Roginskis elected to redeem from the foreclosure sale of the entire property un-

der the Horace Mann deed of trust. Unlike the facts in *Energy Fuels*, the Roginskis were the only lienors seeking to redeem from that sale. Therefore, based upon their lien on the undivided one-half interest of Elizabeth S. Patterson, the Roginskis had the right to redeem the entire property from the sale. *Energy Fuels*, 200 Colo. at 544, 618 P.2d at 1117; *Walker v. Wallace*, 79 Colo. at 385, 246 P. at 554–55. A contrary result would mean that the holder of a lien on the entire property would be required to redeem from a foreclosure sale of an undivided interest in that property or face the consequence of extinguishment of the lien on the entire property. This would in essence violate the principle stated in *Energy Fuels*, in terms based upon the facts of that case, that "[t]he real property interest of two joint tenants cannot be used to satisfy the judgment creditor of one joint tenant." 200 Colo. at 545, 618 P.2d at 1119.[9]

As a result of our analysis, we answer "no" to the second question of law posed by the Tenth Circuit Court of Appeals.

QUINN, C.J., dissents in part, and ROVIRA, J., joins in the partial dissent.

QUINN, Chief Justice, dissenting in part:

I respectfully dissent from Part IV of the court's opinion, which holds that the failure of a junior lienholder to exercise redemption rights under section 38–39–103, 16A C.R.S. (1982), at a public sale foreclosing on an undivided one-half interest in the property does not extinguish the junior lienholder's redemptive rights in a subsequent foreclosure sale of the entire property.

The right to redeem at a public sale foreclosing on a deed of trust is purely statutory, and, therefore, the issue posed

---

9. The Roginskis point out that Sant could have protected the interest he acquired at the Valley Bank & Trust foreclosure sale by exercising his right to redeem from the Horace Mann foreclosure sale. Had he done so, the Roginskis in order to exercise their subsequent right of redemption with respect to the entire property would have been required to pay a redemption

amount including the amount Sant paid for the Valley Bank & Trust certificate of purchase as well as the amount Sant paid for the Horace Mann certificate of purchase. *See* § 38–39–103(1), 16A C.R.S. (1973). Although this set of facts is not before us, the Roginskis' analysis appears to be correct.

by this case must be resolved in the context of the redemption statutes and the purposes behind them. *See Walker v. Wallace*, 79 Colo. 380, 382, 246 P. 553, 553 (1926). Section 38–39–102(1), 16A C.R.S. (1982), states that an owner of real estate sold as a result of a foreclosure of a deed of trust may redeem the premises by paying within seventy-five days after the date of the sale the amount for which the property was sold plus interest, taxes, and any other proper charges provided by law. Section 38–39–103, 16A C.R.S. (1982), provides, in pertinent part, as follows:

(1) If no redemption is made within the redemption period provided for in section 38–39–102, *the encumbrancer or lienor having the senior lien,* according to the records of the county clerk and recorder's office of the county where the real estate is situate, *on the sold premises or some part thereof* subsequent to the lien upon which such sale was held may redeem within ten days after the expiration of the above redemption period by paying the amount required by section 38–39–102, and each subsequent encumbrancer and lienor in succession shall have and be allowed a five-day period to redeem, according to the priority of his lien, and may redeem within the five-day period allotted to him by paying all redemption amounts theretofore paid with interest and the amount of all such liens with interest prior to his own held by such persons as are evidenced in the manner required in this section or, if no encumbrancer or lienor prior to himself has redeemed, by paying the amount required in section 38–39–102.

(2) *No lienor or encumbrancer is entitled to redeem unless, within the redemption period provided for in section 38–39–102, he files a notice of his intention to redeem* with the public trustee, sheriff, or other official making the sale and unless his lien appears by instruments duly recorded or filed as permitted by law.

(Emphasis added).

The plain terms of section 38–39–103 make clear that junior lienholders having a lien "on some part" of the real property sold at a foreclosure sale must file a notice of intention to redeem within seventy-five days from the date of the foreclosure sale in order to preserve their liens and to exercise their redemptive rights at the foreclosure proceeding.

A construction of section 38–39–103 that requires all junior lienholders, regardless of whether their liens cover the entire property or only a fractional interest thereof, to exercise their rights of redemption at a foreclosure sale of a prior partial interest in order to preserve their redemptive rights in a subsequent foreclosure sale of the entire property would promote the purposes of the statutory foreclosure scheme in several ways. Such a construction would enhance the prospects of obtaining the maximum price at a foreclosure sale and paying off as many debts as possible through the redemption process, and also would effectuate much needed certainty and predictability in this area of the law. I agree in this respect with the following observations of the United States District Judge in his resolution of this issue:

[R]edemption statutes seek to benefit both debtors and creditors by reducing the property owner's debt while satisfying every possible creditor through the continual redemption of the same piece of property. *First National Bank v. Energy Fuels,* [200 Colo. 540, 618 P.2d 1115 (1980)]. Thus, the end to be achieved is a·rule which encourages recovery of the highest price for the debtor's property and at the same time protects the value and marketability of that property following sale.

In my opinion, this policy is served by a rule which requires all junior lienors to participate in the redemption process in order to preserve their interests, even where the foreclosure sale involves only a partial interest in the property. This rule encourages participation in the redemption process, thereby maximizing the price obtained upon sale. Moreover, this rule leaves no confusion about the rights of subsequent lienors following the issuance of the trustee's deed and therefore protects the value of the prop-

erty interest obtained upon purchase or redemption.

*Sant v. Stephens*, 580 F.Supp. 1003, 1006–07 (D.C.Colo.1983) (footnote omitted); *see also Bailey v. Erny*, 68 Colo. 211, 189 P. 18 (1920) (redemption laws are "not intended to induce speculation upon the part of the execution purchasers"). Moreover, this construction would also protect a person purchasing a partial interest in the property at a foreclosure sale under a junior lien from losing the value of that interest by reason of a junior lienholder's purchase of the entire interest at a subsequent foreclosure sale under a senior lien.

I acknowledge that requiring all junior lienholders to exercise their redemptive rights at a foreclosure sale of a prior partial interest in order to preserve their rights at a subsequent foreclosure sale, even though their liens extend to the entire property rather than merely the fractional interest for which the former foreclosure proceeding was conducted, might counteract the rule of not utilizing the property interest of two joint tenants to satisfy the judgment creditor of one joint tenant, at least to the extent that this rule might come into play at the subsequent foreclosure sale of the entire property. *See First National Bank v. Energy Fuels Corp.*, 200 Colo. 540, 545, 618 P.2d 1115, 1119 (1980). To the extent that this requirement brings about this result, however, I believe it should be viewed as the unavoidable by-product of construing the statute in a manner that enhances the primary goals of maximizing the price obtained at a foreclosure sale, paying off as many debts as possible through successive redemptions, and bringing about certainty and predictability in foreclosure proceedings.

In the instant case, for example, the Roginskis could have preserved their redemptive rights by filing a timely notice of intention to redeem in the Valley Bank and Trust foreclosure proceeding and exercising their redemptive rights at that proceeding by paying the sum for which J. James Patterson's undivided one-half interest was sold to Sant at the foreclosure sale, plus interest and other proper charges provided by law. The Roginskis could then have preserved their right to redeem in the Horace Mann foreclosure by filing a notice of intention to redeem, and upon payment of the sum for which the property was sold to Sant at that foreclosure proceeding, plus interest and other costs provided by law, the Roginskis could have obtained a public trustee's deed which would have vested them, as the last redeeming lienholders, with title free and clear of all liens and encumbrances recorded or filed subsequent to their lien. *See* § 38–39–110, 16A C.R.S. (1982). This process would have maximized the price obtained at both foreclosure proceedings, would have utilized the property to pay off as many debts as possible through successive redemptions, and would have provided Sant, who purchased J. James Patterson's undivided one-half interest at the Valley Bank and Trust foreclosure of the junior lien, with reimbursement in full for the value of the property interests which he purchased at both foreclosures.

In contrast to the majority, I would answer "yes" to Question No. 2, and hold that the failure of a junior lienholder to exercise redemption rights under section 38–39–103 at a public sale foreclosing on an undivided one-half interest in the property extinguishes the junior lienholder's redemptive rights in a subsequent foreclosure sale of the entire property.

I am authorized to say that Justice ROVIRA joins me in this dissent.